## THE HAMILTON.[1]

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 71.    Argued October 24, 1907.—Decided December 23, 1907.

Until Congress acts on the subject, a State may legislate in regard to the duties and liabilities of its citizens and corporations while on the high seas and not within the territory of any other sovereign.

Where a fund is being distributed in a proceeding to limit the liability of the owners of a vessel, all claims to which the admiralty does not deny existence must be recognized, whether admiralty liens or not.

The statute of Delaware giving damages for death caused by tort is a valid exercise of the legislative power of the State, and extends to the case of a citizen of that State wrongfully killed while on the high seas in a vessel

---

[1] Docket title, Old Dominion Steamship Company, owner of the Steamship Hamilton, *v.* Gilmore.

belonging to a Delaware corporation by the negligence of another vessel also belonging to a Delaware corporation. A claim against the owner of one of the vessels in fault can be enforced in a proceeding in admiralty brought by such owner to limit its liability.

When both vessels in collision are in fault the representatives of a seaman on one of the vessels, killed without contributory negligence on his part, may, in a proceeding to limit liability, where an action is given by the state statute against the owner of the other vessel, recover full damages, and are not limited to damages recoverable under the maritime law against the seaman's own vessel for death or injury caused by negligence of the master thereof or his fellow servants thereon. Neither the seaman's contract with the owners of the vessel he is on, nor the negligence of his own vessel, nor any provision of the Harter Act affects the claim against the other vessel.

146 Fed. Rep. 724, affirmed.

THE facts are stated in the opinion.

*Mr. Harrington Putnam,* with whom *Mr. Henry E. Mattison* was on the brief, for petitioner:

The Delaware statute does not apply to a claim for death on the high seas arising from tort, in proceedings in admiralty.

In the relation which springs out of tort, there is no basis for saying that the parties have impliedly consented to be bound by the law of any particular State. As a consequence their rights and liabilities are to be determined by the general principles of maritime law as administered in our admiralty courts. If the Hamilton had belonged in one State, the Saginaw in another and the deceased in still another State, the law of any particular State could not more than another have precedence and a controlling influence. On the contrary, there is no presumption that the relations of the parties are to be fixed by the laws of any one State when an injury accrues on the high seas through a pure marine tort. *Rundell* v. *Compagnie Générale,* 94 Fed. Rep. 366; aff'd 100 Fed. Rep. 655.

The origin of the fiction that a merchant ship may be regarded as a floating portion of a country, or, as the doctrine is sometimes expressed, that it is a continuation or prolongation of the National territory, is as recent as 1752. Modern writers treat this fiction as having only a limited application. Hall on International Law, Oxford, 1904, pp. 249, 250.

The doctrine of "territoriality" is rather a limit on rights of search and protection against aggression than one that confers new rights of action for tort. Walker, Science of International Law, pp. 130, 131.

Independent of precedent, it is plain that the liability for wrongs, and especially for causing death, is to be determined in admiralty by the court administering the law of the forum. No State can extend its laws over the ocean. The Federal laws alone, and the maritime jurisprudence administered by the Federal courts must decide the liability for wrongs committed outside of territorial waters.

The doctrine that merchant ships are part of the territory, if applicable to collisions, would also govern salvage on the high seas. Such attempts to impose foreign laws have often been made, but have never been successful in the United States courts. *The Edam*, 13 Fed. Rep. 135, 139.

The territorial fiction depends on contracts, because publicists recognize that it is only when the crew are on board that the doctrine of territoriality applies. Once the contracting members of the ship's company leave the vessel the fiction vanishes. Woolsey, International Law (6th ed.), p. 72.

Statutes providing for the survivorship of rights of action, and recovery in case of loss of life, have been enacted in varying forms, not only by the States of the Union, but also by foreign countries, with which the United States has intimate relations—especially by England and the Canadian provinces. The system of law on the continent of Europe in some form also gives a recovery for loss of life. Yet in no case have the courts of Great Britain or the United States regarded the law of the flag upon the high seas as authorizing such a recovery in the admiralty courts. Even in Canada the admiralty has no jurisdiction for loss of life. *Monaghan* v. *Horn*, 7 Du Val (Supreme Court, Canada), 409.

The same rule was reached in England (notwithstanding Lord Campbell's Act) that admiralty has no jurisdiction for loss of life. *The Vera Cruz*, 10 App. Cas. 59 (1884).

Cases of tort arising upon the high seas, in the admiralty courts of the United States, will be governed by the law of the forum, which is the general maritime law as administered in these courts. *The Scotland*, 105 U. S. 24; *The Belgenland*, 114 U. S. 355; *The Brantford City*, 29 Fed. Rep. 373.

Next to the natural justice of its principles, the highest value of maritime law consists in its uniformity and general acceptance. We are not dealing with municipal law nor with general commercial law not maritime, both of which are prescribed and administered concurrently by the state and Federal legislatures and courts, but we have to deal with that which relates exclusively to the maritime law and the admiralty jurisdiction. That law is not subject to the change or modification of state legislatures.

Indeed, one of the controlling reasons for conferring on the general government the exclusive jurisdiction of all admiralty and maritime causes was to secure the great benefits which must inevitably result from uniformity in the maritime law.

A State cannot, therefore, destroy the symmetry of that law by creating maritime rights or conferring jurisdiction in any particular upon an admiralty court. *The Manhasset*, 18 Fed. Rep. 918, 923; *Welsh v. The North Cambria*, 40 Fed. Rep. 655, 656; *The Lyndhurst*, 48 Fed. Rep. 839, 841; *Workman* v. *The Mayor &c.*, 179 U. S. 552, 558.

The surviving members of the crew of the Saginaw cannot maintain their claim for its full face, but the Hamilton remains answerable for only half of all such losses. *The Osceola*, 189 U. S. 158, 175; *The City of New York*, 25 Fed. Rep. 151; *The Queen*, 40 Fed. Rep. 694; *Stahl* v. *The Niagara*, 77 Fed. Rep. 329, 336.

*Mr. J. Parker Kirlin* and *Mr. George Whitefield Betts*, with whom *Mr. John M. Woolsey* and *Mr. Howard M. Long* were on the brief, for respondents:

Since Congress has not legislated with reference to the subject, the statute of the State of Delaware, as a sovereign State,

allowing damages for death is binding and effective on its vessels when on the high seas. *The Lottowanna*, 21 Wall. 558, 580; *The Glide*, 167 U. S. 606; *Ex parte McNiel*, 13 Wall. 236; *Cooley* v. *Board of Wardens*, 12 How. 299; *Steamboat Co.* v. *Chase*, 16 Wall. 522; *Sherlock* v. *Alling*, 93 U. S. 99.

The Hamilton and Saginaw, for the purposes of this proceeding, were parts of the territory of the State of Delaware, and subject to its laws. *Wilson* v. *McNamee*, 102 U. S. 572; *Crapo* v. *Kelly*, 16 Wall. 610; *The Lamington*, 87 Fed Rep. 752.

There has been no negligence shown on the part of the members of the crew of the Saginaw. It was proper, therefore, to allow the full amount of their claims. *The Atlas*, 93 U. S. 302; *The Albert Dumois*, 177 U. S. 240, 243, 260. See also *The Juniata*, 93 U. S. 337; *The North Star*, 106 U. S. 17, 22; *The Chattahoochee*, 173 U. S. 540, 549; *The New York*, 175 U. S. 187; *Ex parte Union Steamboat Co.*, 178 U. S. 317; *The Conemaugh*, 189 U. S. 363.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a proceeding for the limitation of liability of the steamship Hamilton in respect of a collision on the high seas with the steamship Saginaw, in which the Saginaw was sunk and her chief mate and some of her crew and passengers were drowned. It is found, and not disputed, that both vessels were to blame. Both vessels belonged to corporations of the State of Delaware. A statute of that State, after enacting that actions for injuries to the person shall not abate by reason of the plaintiff's death, provides that "whenever death shall be occasioned by unlawful violence or negligence, and no suit be brought by the party injured to recover damages during his or her life, the widow or widower of any such deceased person, or if there be no widow or widower, the personal representatives may maintain an action for and recover damages for the death and loss thus occasioned." Act of January 26, 1866, chap. 31, p. 28, vol. 13, Part 1, Delaware Laws, as amended

by act of March 9, 1901, chap. 210, p. 500, vol. 22, Delaware Laws. On the strength of this statute the representatives of a passenger and of three of the crew filed claims; and the claims were allowed by the District Court (see 134 Fed. Rep. 95; 139 Fed. Rep. 906), and afterwards by the Circuit Court of Appeals; 146 Fed. Rep. 724; 77 C. C. A. 150. A certiorari was granted by this court to settle the question, as stated by the petitioner, whether the Delaware statute applies to a claim for death on the high seas, arising purely from tort, in proceedings in admiralty. Incidentally the right of representatives of the crew of the Saginaw to recover their claims in full against the Hamilton also has been discussed.

Apart from the subordination of the State of Delaware to the Constitution of the United States there is no doubt that it would have had power to make its statute applicable to this case. When so applied, the statute governs the reciprocal liabilities of two corporations, existing only by virtue of the laws of Delaware, and permanently within its jurisdiction, for the consequences of conduct set in motion by them there, operating outside the territory of the State, it is true, but within no other territorial jurisdiction. If confined to corporations, the State would have power to enforce its law to the extent of their property in every case. But the same authority would exist as to citizens domiciled within the State, even when personally on the high seas, and not only could be enforced by the State in case of their return, which their domicil by its very meaning promised, but in proper cases would be recognized in other jurisdictions by the courts of other States. In short, the bare fact of the parties being outside the territory in a place belonging to no other sovereign would not limit the authority of the State, as accepted by civilized theory. No one doubts the power of England or France to govern their own ships upon the high seas.

The first question, then, is narrowed to whether there is anything in the structure of the National Government and under the Constitution of the United States that takes away

or qualifies the authority that otherwise Delaware would possess—a question that seems to have been considered doubtful in *Butler* v. *Boston & Savannah Steamship Co.*, 130 U. S. 527, 558. It has two branches: First, whether the state law is valid for any purpose, and, next, whether, if valid, it will be applied in the admiralty. We will take them up in order.

The power of Congress to legislate upon the subject has been derived both from the power to regulate commerce and from the clause in the Constitution extending the judicial power to "all cases of admiralty and maritime jurisdiction." Art. 3, § 2; 130 U. S. 557. The doubt in this case arises as to the power of the States where Congress has remained silent.

That doubt, however, cannot be serious. The grant of admiralty jurisdiction, followed and construed by the Judiciary Act of 1789, "saving to suitors in all cases the right of a common law remedy where the common law is competent to give it," Rev. Stats. § 563, cl. 8, leaves open the common law jurisdiction of the state courts over torts committed at sea. This, we believe, always has been admitted. *Martin* v. *Hunter*, 1 Wheat. 304, 337; *The Hine* v. *Trevor*, 4 Wall. 555, 571; *Leon* v. *Galceran*, 11 Wall. 185; *Manchester* v. *Massachusetts*, 139 U. S. 240, 262. And as the state courts in their decisions would follow their own notions about the law and might change them from time to time, it would be strange if the State might not make changes by its other mouthpiece, the legislature. The same argument that deduces the legislative power of Congress from the jurisdiction of the National courts, tends to establish the legislative power of the State where Congress has not acted. Accordingly, it has been held that a statute giving damages for death caused by a tort might be enforced in a state court, although the tort was committed at sea. *American Steamboat Co.* v. *Chase*, 16 Wall. 522. So far as the objection to the state law is founded on the admiralty clause in the Constitution, it would seem not to matter whether the accident happened near shore or in mid-ocean, notwithstanding some expressions of doubt. The same conclusion was reached in *Mc-*

*Donald* v. *Mallory*, 77 N. Y. 546, where the death occurred on the high seas. *Sherlock* v. *Alling*, 93 U. S. 99, reinforces *Chase's case*, and answers any argument based on the power of Congress over commerce, as to which we hardly need refer also to *Cooley* v. *Board of Wardens*, 12 How. 299, *Ex parte McNiel*, 13 Wall. 236.; *Wilson* v. *McNamee*, 102 U. S. 572, and *Homer Ramsdell Transportation Co.* v. *La Compagnie Générale Transatlantique* 182 U. S. 406, concerning state pilotage laws.

The jurisdiction commonly expressed in the formula that a vessel at sea is regarded as part of the territory of the State, was held, upon much consideration, to belong to Massachusetts, so far as to give preference to a judicial assignment in insolvency of such a vessel over an attachment levied immediately upon her arrival at New York, in *Crapo* v. *Kelly*, 16 Wall. 610. That decision was regarded as necessitating the conclusion reached in *McDonald* v. *Mallory*, *supra*. Other instances of state regulation are mentioned in *The City of Norwalk*, 55 Fed. Rep. 98, 106; but without further recapitulation of the authorities, we are of opinion that the statute is valid. See *Workman* v. *New York*, 179 U. S. 552, 563. We should add, what has been assumed thus far, as it had to be assumed in order to raise the question discussed, that we construe the statute as intended to govern all cases which it is competent to govern, or at least not to be confined to deaths occasioned on land. *McDonald* v. *Mallory*, 77 N. Y. 546. If it touches any case at sea, it controls this. See *The Belgenland*, 114 U. S. 355, 370. Whether it is to be taken to offer a similar liability of Delaware owners to foreign subjects, *Mulhall* v. *Fallon*, 176 Massachusetts, 266, need not be determined now.

We pass to the other branch of the first question: whether the state law, being valid, will be applied in the admiralty. Being valid, it created an *obligatio*, a personal liability of the owner of the Hamilton to the claimants. *Slater* v. *Mexican National R. R. Co.*, 194 U. S. 120, 126. This, of course, the admiralty would not disregard, but would respect the right when brought before it in any legitimate way. *Ex parte Mc-*

*Niel,* 13 Wall. 236, 243. It might not give a proceeding *in rem,* since the statute does not purport to create a lien. It might give a proceeding *in personam. The Corsair,* 145 U. S. 335, 347. If it gave the latter, the result would not be, as suggested, to create different laws for different districts. The liability would be recognized in all. Nor would there be produced any lamentable lack of uniformity. Courts constantly enforce rights arising from and depending upon other laws than those governing the local transactions of the jurisdiction in which they sit. But we are not concerned with these considerations. In this case the statutes of the United States have enabled the owner to transfer its liability to a fund and to the exclusive jurisdiction of the admiralty, and it has done so. That fund is being distributed. In such circumstances all claims to which the admiralty does not deny existence must be recognized, whether admiralty liens or not. This is not only a general principle, *Andrews* v. *Wall,* 3 How. 568, 573; *The J. E. Rumbell,* 148 U. S. 1, 15; Admiralty Rule, 43; *Cargo Ex Galam,* 2 Moore P. C. (N. S.) 216, 236, but is the result of the statute, which provides for, as well as limits the liability, and allows it to be proved against the fund. *The Albert Dumois,* 177 U. S. 240, 260. See *Workman* v. *New York,* 179 U. S. 552, 563.

The second question concerns the right of the representatives of the crew to recover their claims in full. There is a faint suggestion that the mate of the Saginaw was negligent, but on this point we shall not go behind the findings below. The main objection is that the statute allows a recovery beyond the maintenance and support which were declared in *The Osceola,* 189 U. S. 158, 175, to be the limit of a seaman's rights against his own vessel when injured by the negligence of the master or a fellow-servant on his ship. But the question here regards the liability of the Hamilton, another vessel. The contract between the seaman and the owners of the Saginaw does not affect the case. *Erie R. R. Co.* v. *Erie Transportation Co.,* 204 U. S. 220, 226. Neither does the Harter Act, even if its terms could be extended to personal injuries and loss of life. *The Chatta-*

*hoochee;,* 173 U. S. 540. Neither does the negligence of the Saginaw. *The Atlas,* 93 U. S. 302.

We are of opinion that all the claimants are entitled to the full benefits of a statute "granting the right to relief where otherwise it could not be administered by a maritime court." *Workman* v. *New York,* 179 U. S. 552, 563.

*Decree affirmed.*