[S. F. No. 7245.  In Bank.—January 19, 1917.]

EMIL T. KRUSE et al., Petitioners, v. A. J. PILLSBURY
    et al., as Members of the Industrial Accident Commission
    of the State of California, Respondents.

WORKMEN'S COMPENSATION ACT—INJURY RECEIVED OUTSIDE OF STATE.
    The Workmen's Compensation Act does not authorize the making of
    an award by the Industrial Accident Commission for injuries to an
    employee received outside of the state.

ID.—EMPLOYEE ON MERCHANT VESSEL—INJURY IN PORT OF ANOTHER STATE.—An employee killed in performing service growing out of, incidental to, and in the course of his employment, upon a merchant vessel owned in California while it was within a port of another state, was not constructively within the territorial limts of the state of California at the time of his death, and liability therefor is determined by the law of the state in which the death occurred. The dependent wife of such person may not have an award of compensation therefor under the Workmen's Compensation Act of California.

ID.—VESSEL IN PORT GOVERNED BY LEX LOCI.—When a merchant vessel of one country enters the port of another for the purpose of commerce it subjects itself to the laws of the sovereignty governing such port, unless some different rule has been established by treaty or otherwise.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission of the State of California.

The facts are stated in the opinion of the court.

Ira A. Campbell, and McCutchen, Olney & Willard, for Petitioners.

Christopher M. Bradley, for Respondents.

F. R. Wall, for Applicant.

MELVIN, J.—A writ of *certiorari* was issued for a review by this court of the proceedings by which a majority of the members of the Industrial Accident Commission of this state made an award in favor of Mary Sandberg, the widow of a sailor who lost his life while in the service of the petitioners on board the steamer "Doris," in the state of Washington.

The main question examined by the commission was this: Does the statute authorize the making of an award for injuries received outside of the state?

This has been answered in the negative by this court (*North Alaska Salmon Co. (a Corporation), v. A. J. Pillsbury, Will J. French, and Harris Weinstock, as Members of and Constituting the Industrial Accident Commission of the State of California*), ante, p. 1, [162 Pac. 93], and that case is decisive upon all questions save one raised by the petitioners herein.

It is argued that the question of extraterritoriality is not involved at all, respondent's counsel taking the position that the schooner "Doris," on which the accident occurred, was a part of the territory of the state of California and subject to the jurisdiction of the Industrial Accident Commission of this state.

The deceased, Louis Sandberg, at the time of the accident was second officer of the "Doris." It was stipulated at the hearing before the Industrial Accident Commission that said accident occurred at Hoquiam, in the state of Washington; that at the time of the accident the deceased employee was performing service growing out of, incidental to, and in the course of his employment; that the accident was not caused by the willful misconduct or intoxication of the deceased employee.

It thus appears that when the accident occurred the vessel and the officer who was killed were not only within the boundaries of the state of Washington, but were in a port subject to the shipping and other laws of that commonwealth. This fact is to be kept in mind in an analysis of the authorities cited by respondents. In support of the theory that the fiction of admiralty makes the steamer on which the accident occurred a part of the state of California several authorities are cited. The first of these, *Crapo* v. *Kelly*, 16 Wall. 610, [21 L. Ed. 430], involved the ownership of a vessel registered in Massachusetts. During a voyage to New York, while the vessel was on the high seas, the owner applied for the benefit of the insolvency laws of Massachusetts, and in the course of the proceedings the court made an order the result of which was to transfer all of the insolvent's property to the assignee. On the arrival of the vessel at the port of New York the sheriff of that county levied an attachment for a debt owed by the insolvent to a resident of the state of New York. It was held that the transfer of the title to the vessel by the court of Massachusetts was just as effective as if it had taken place while she was physically within the state of Massachusetts. The basis of the decision is that while at sea the vessel was constructively a part of the state of Massachusetts. In *McDonald* v. *Mallory,* 77 N. Y. 550, [33 Am. Rep. 664], in an opinion written by Judge Rapallo, the authority of *Crapo* v. *Kelly,* 16 Wall. 610, [21 L. Ed. 430], was followed, and it was decided that the courts of New York

had jurisdiction to try a case involving demanded damages for the death of a citizen of New York, on a ship owned and registered in that state, the death having occurred while the said vessel was on the high seas. But the fact that both of these cases involve matters occurring on the high seas differentiates them from those cases in which the vessels were in foreign ports at the times when the jurisdiction of the courts of their home states was sought to be applied. In the case of *Crapo* v. *Kelly* it was conceded that if the vessel at the time of the execution of the court's assignment had been in the port of New York, and had subsequently been seized there under attachment proceedings by a creditor in New York the attachment would have held her as against the prior assignment. In *McDonald* v. *Mallory*, 77 N. Y. 550, [33 Am. Rep. 664], the general rule on the subject was thus stated: "The liability of a person for his acts depends, in general, upon the laws of the place where the acts were committed, and although a civil right of action acquired, or liability incurred, in one state or country for a personal injury may be enforced in another to which the parties may remove or where they be found, yet the right or liability must exist under the laws of the place where the act was done. Actions for injuries to the person committed abroad are sustained without proof in the first instance of the *lex loci*, upon the presumption that the right to compensation for such injuries is recognized by the laws of all countries. But this presumption cannot apply where the wrong complained of is not one of those thus universally recognized as a ground of action, but is one for which redress is given only by statute."

*Beyer* v. *Hamburg-American S. S. Co.*, 171 Fed. 582, also cited by respondents, was a case in which a German sailor sought to obtain damages in an American court. As the accident occurred upon the high seas upon a German vessel carrying the German flag it was held that the law of Germany governed the case.

But respondents are of the opinion that the modern rule is not dependent upon the location of the ship at the time of the accident, and in this behalf they cite several authorities which we shall examine. The first of these is *Thompson Towing & Wrecking Assn.* v. *McGregor*, 207 Fed. 209, [124 C. C. A. 479]. In that case the accident which was the basis of plaintiff's claim occurred by reason of an explosion upon an

American vessel then on Mud Lake, an arm of Lake Huron. It was not certain on which side of the boundary line between the United States and Canada the vessel was floating at the time of the accident. The trial court found, however, that she was on Canadian waters at that time. The circuit court, commenting on this finding, said that it was to be remembered that the vessel had been taken from the American side for a temporary purpose only, i. e., for assisting in floating a stranded ship, and that, without touching at any Canadian port, she was brought back to the nearest American harbor directly after the accident. This, we take it, is important as showing that probably no local statute was involved or could be held applicable to the accident on the steamer from Michigan. Mrs. Workman, the claimant, was a citizen of Michigan; the "Stewart," on which her husband's death occurred, was owned in Michigan, and the deceased was a citizen of that state up to the time of his death. Any right Mrs. Workman might have possessed under the statutes of Ontario was barred by the lapse of time, but concededly the suit was instituted within the time limited by the statute of Michigan. The court, in discussing this phase of the case, said, in part: "Can the right of action in terms preserved to the widow by that statute be enforced? If so, it is because at the time of the death the Stewart was, through ownership and registration, domiciled in Michigan and was, as respects the enforcement of such a right, part of the territory of Michigan. So far as this question is concerned, the ultimate basis of the decree was 'that the explosion of this boiler was a matter which did not directly involve the "peace, dignity, or tranquility" of the Canadian Government but rather involved the "internal discipline and management" of the ship.' This was regarded as being in accordance with the *ratio decidendi* in *United States* v. *Rodgers*, 150 U. S. 249, 266, [14 Sup. Ct. Rep. 109, 113, 116, 37 L. Ed. 1071], in which it was held that the federal courts have jurisdiction, under section 5346 of the Revised Statutes [1 Fed. Stats. Ann., 1st ed., p. 511, U. S. Comp. Stats. 1901, p. 3630], to try a person for a crime 'committed on a vessel belonging to a citizen of the United States when such vessel is in the Detroit River, out of the jurisdiction of any particular state, and within the territorial limits of the Dominion of Canada.'

"Thus the question confronting us is at last narrowed to the inquiry whether, since the act causing the death of Workman occurred on a vessel owned and territorially situated similarly to the vessel involved in the Rodgers case, jurisdiction extends to the enforcement of a civil liability, like the one urged here. . . . So far as the question of jurisdiction is concerned, if the Canadian waters in question could be regarded the same as the waters of one of the open oceans, recovery in this case might be warranted by decisions like that of *The Hamilton*, 207 U. S. 398, 405, [28 Sup. Ct. Rep. 133, 134, 52 L. Ed. 264]; but that case grew out of a collision at sea, without the territorial jurisdiction of any particular nation, and concerned lost members of the crew of the sunken vessel and claims made on account of their deaths against a fund derived from the Hamilton, under the limitation acts of Congress; Mr. Justice Holmes stating: 'The jurisdiction commonly expressed in the formula that a vessel at sea is regarded as part of the territory of the state, was held, upon much consideration, to belong to Massachusetts,' etc.

"It is strongly contended that the Hamilton, and the class of cases it represents, are inapplicable because the Stewart was at the time of the accident lying in waters of another nation. The idea, of course, is that the local law of the place of injury and death must govern. No doubt this is the general rule; still, in determining the place of Workman's death, we must not overlook the question whether, in the circumstances of this case, the Stewart was constructively part of Michigan, so far as her 'internal management and discipline' were concerned. This cannot be solved by such cases as *Smith v. Condry*, 1 How. (U. S.) 28, 32, [11 L. Ed. 35], where, in passing upon the rights of two American vessels which had collided at the dock of the port of Liverpool, it was held that certain British statutes enacted for the regulation of pilots conducting ships were controlling." Further, in the course of the opinion, the court said: "Since the right of action here has been preserved in Mrs. Workman by the Michigan statute, there is no perceivable reason why the right cannot under the facts of this case be enforced. If that statute were an act of Congress and limited in its operation to the waters of the Great Lakes, navigable rivers, etc., the instant case could not be rationally distinguished from the Rodgers case. As Congress has chosen to remain silent, the subject matter of the

Michigan statute, both as to lands and navigable waters within its borders, was plainly within the legislative power of the state (*Bigelow* v. *Nickerson,* 70 Fed. 113, 117 et seq., 17 C. C. A. 1, 30 L. R. A. 336, (C. C. A. 7th Cir.) ; *Chicago Transit Co.* v. *Campbell,* 110 Ill. App. 366, 370, 371) ; and there should be accorded to it the same operation and effect concerning the Stewart and her location as would be to an appropriate similar act of Congress. In speaking of the vessels passing through the Detroit River, Mr. Justice Field said in the Rodgers case, 150 U. S. 260, [14 Sup. Ct. Rep. 113, 37 L. Ed. 1071] : 'All of them, however, so far as transactions had on board are concerned, are deemed to be within the country of their owners. Constructively they constitute a part of the territory of the nation to which the owners belong. Whilst they are on the navigable waters of the river they are within the admiralty jurisdiction of that country. This jurisdiction is not changed by the fact that each of the neighboring nations may in some cases assert its own authority over persons on such vessels in relation to acts committed by them within its territorial limits. . . . The general rule is that the country to which the vessel belongs will exercise jurisdiction over all matters affecting the vessel or those belonging to her, without interference of the local government, unless they involve its peace, dignity, or tranquility, in which case it may assert its authority. *Wildenhus' Case,* 120 U. S. 1, 12, [7 Sup. Ct. Rep. 385, 30 L. Ed. 565] ; Halleck on International Law, c. 7, sec. 26, p. 172.' "

We have quoted thus liberally from the above-cited case because it seems to be the authority upon which respondents rely most confidently as supporting their position.

Another case which seems to lend some weight to the argument of respondents is *Da Costa* v. *Southern Pacific Co.,* 160 Fed. 216. That was an action by the administrator of a late resident of Massachusetts for damages on account of the death of his decedent by reason of the negligence of the defendant. There were three counts, one stating that the accident occurred in the harbor of Galveston within three miles of the shore of Texas, and that plaintiff had a cause of action by virtue of the law of Texas; the second alleged that defendant operated a line of steamers between New York and Galveston, and that by reason of the accident a cause of action arose under the New York code; and the third setting forth

defendant's status as a corporation under the laws of Kentucky, pleaded a cause of action accruing to plaintiff by virtue of a statute of the last-named state. Judge Lowell decided on the authority of *The Hamilton* that a cause of action arose under the Kentucky statute. It developed in later stages of the case that death actually took place on the high seas (167 Fed. 654; 176 Fed. 843, [100 C. C. A. 313]; 190 Fed. 689, [111 C. C. A. 417]); but the ruling that the Kentucky statute was applicable was made upon pleadings which located the accident at a place within the state of Texas.

In support of the doctrine that the fact of the vessel's presence in the port of a foreign sovereignty at the time of the accident does not deprive of jurisdiction the government of the state in which the vessel is owned and chartered, respondents quote an expression of Mr. Justice Holmes made in the course of the opinion in the matter of *The Hamilton,* 207 U. S. 404, [52 L. Ed. 264, 28 Sup. Ct. Rep. 133], where, in discussing the principles announced in the opinion in *American Steamboat Co.* v. *Chase,* 16 Wall. 522, [21 L. Ed. 369], that learned justice said: "So far as the objection to the state law is founded on the admiralty clause in the Constitution, it would seem not to matter whether the accident happened near shore or in mid-ocean, notwithstanding some expressions of doubt."

In our opinion none of the cases above considered nor any other authority cited by respondents supports the conclusion that the dependent wife of a person who was killed within a port of another state upon a vessel owned in California and under the circumstances attending the death of Sandberg, is entitled to relief under the workmen's compensation law of this state. *Thompson Towing Association* v. *McGregor,* 207 Fed. 209, [124 C. C. A. 479], in its last analysis held merely that in the absence of congressional legislation on the subject, an accident occurring upon a ship sailing on the open waters of the great lakes was to be treated as one happening upon the high seas, even if the boat was then north of the boundary line between the United States and the British possessions. The *dictum* of Judge Lowell in *Da Costa* v. *Southern Pacific Co.,* 160 Fed. 216, involved a situation in which local laws would in all probability have no operative effect, and the quotation from the opinion of Mr. Justice Holmes is not applicable to the facts in the matter before us, because

he was analyzing a state of facts involving an accident on the high seas.

On the other hand, there are many authorities in support of the rule that when a merchant vessel of one country enters the port of another for the purposes of commerce it subjects itself to the laws of the sovereignty governing such port, unless some different rule has been established by treaty or otherwise. This in substance was the ruling in *Wildenhus' Case, supra,* and in *Crapo* v. *Kelly, supra,* the court quoted with approval the words of Mr. Wheaton in his work on International Law, eighth edition, section 106, as follows: "Both the public and private vessels of every nation on the high seas, and *out of the territorial limits of any other state,* are subject to the jurisdiction of the state to which they belong."

All nations have equal authority upon the high seas, and therefore a ship upon the waters of the open ocean is subject to the laws of the home port, being for all purposes a part of the substance of the country from which she sails. But in the port of a foreign country the laws of that country are in full force and must operate to the exclusion of the statutes of the sovereignty governing the ship's home port. Professor Pomeroy, in his work on International Law, section 145, uses the following language: "The ports and roadsteads are unquestionably a part of the territory, and subject to the exclusive dominion of the state to which they belong, to the same extent as the land itself. *They are governed in all respects by the municipal law.*"

In *The Scotland,* 105 U. S. 24, [26 L. Ed. 1001], Mr. Justice Bradley, delivering the opinion of the court, said:

"In administering justice between parties it is essential to know by what law, or code, or system of laws, their mutual rights are to be determined. When they arise in a particular country or state, they are generally to be determined by the laws of that state. Those laws pervade all transactions which take place where they prevail, and give them their color and legal effect."

In 1 Kent's Commentaries, pages 29, 30, the learned author asserts that exclusive jurisdiction of a state over those portions of the sea embraced within its harbors, gulfs, bays, and estuaries is unquestionable.

In *The Bee,* 216 Fed. 709, the action was based upon injuries received by a stevedore at a dock in Portland, Oregon,

while assisting in the loading of a vessel owned in California. The suit was transferred to the district court of the United States because of diversity of citizenship, but the learned judge of that court applied the law of Oregon saying, in part, "where the act of a ship occasions an actionable personal injury, not maritime, the law, I take it, is that the rights of the parties are to be determined by the law of the place where the injury occurred, and not that of the home port of the vessel. (*Northern Pac. Ry. Co.* v. *Babcock*, 154 U. S. 190, [14 Sup. Ct. Rep. 978, 38 L. Ed. 958] ; *Stewart* v. *Baltimore & O. R. R. Co.*, 168 U. S. 445, [18 Sup. Ct. Rep. 105, 42 L. Ed. 537].)"

In *Faras* v. *Lower California Development Co.*, 27 Cal. App. 688, [151 Pac. 35], the court was considering an appeal in an action for damages for personal injuries. Plaintiff was a citizen of Mexico, employed as a sailor upon a British ship. He was injured while the vessel was tied to a wharf in the harbor of San Diego. The court refused to apply the law of Great Britain as it defines the responsibility of the master to his servant. This refusal was sustained by the district court of appeal and a petition to have the case transferred to this court was denied.

The text-writers state the rule that the laws of the parent state apply to a ship *on the high seas,* but they do not extend the rule to vessels lying in the ports of alien nations. (See in addition to the works previously cited, Wharton on Conflict of Laws, sec. 356, Wildman on International Law, p. 40, and Minor on Conflict of Laws, p. 272; and to the same effect, see *Beyer* v. *Hamburg etc. Co.*, 171 Fed. 583.) Indeed, we are cited to no authority holding that the laws of the home port control in a case of this sort in which the accident took place in the port of a foreign state or nation.

The award is annulled.

Sloss, J., Lorigan, J., Shaw, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.