**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TONYA HELMAN, individually and
as Personal Representatives of and
Successors-In-Interest to the
Successor Estate of Cory Helman,
deceased; JIM HELMAN,
individually and as Personal
Representatives of and Successors-
In-Interest to the Successor/Estate
of Cory Helman, deceased; SANDY
HELMAN, individually and as
Personal Representatives of and
Successors-In-Interest to the
Successor/Estate of Cory Helman,
deceased; B.W., a female minor,
by and through their Guardian Ad
Litem, Victoria Will; B.W., male
minor, by and through their
Guardian Ad Litem, Victoria Will;
VICTORIA WILL, individually and as
Personal Representatives of and
Successors-In-Interest to the
Successor/Estate of Christopher
Will, deceased; CRAIG WILL,
individually and as Personal
Representatives of and Successors-
In-Interest to the Successor/Estate
of Christopher Will, deceased;
DAVID DYER, individually and as
Personal Representatives of and
Successors-In-Interest to the
Successor/Estate of Adam Dyer,

No. 09-56501

D.C. No.
2:09-cv-01353-
SVW-FFM

OPINION

deceased; STEPHANIE DYER, individually and as Personal Representatives of and Successors-In-Interest to the Successor/Estate of Adam Dyer, deceased,

*Plaintiffs-Appellants,*

v.

ALCOA GLOBAL FASTENERS, INC., a California Corporation; PACIFIC SCIENTIFIC, a Corporation; HI-SHEAR CORPORATION, a California Corporation; SIKORSKY AIRCRAFT CORPORATION, a Corporation; SIKORSKY SUPPORT SERVICES, INC., a Corporation; PARKER-HANNIFIN CORPORATION, a Corporation; GENERAL ELECTRIC, a Corporation,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
December 6, 2010—Pasadena, California

Filed March 14, 2011

Before: Betty B. Fletcher, Marsha S. Berzon, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge B. Fletcher

**COUNSEL**

James Paul Collins, John P. Kristensen, Terry O'Reilly, Nina Shapirshteyn, Gary Lynn Simms, O'Reilly Collins, San Mateo, California, for the plaintiffs-appellants.

Kevin Sutherland, Clyde and Co US, San Francisco, California, Stephen Brunk, Law Office of Stephen K. Brunk, La

Jolla, California, Timothy J. Ryan, Rebekka Martorano, The Ryan Law Group, Sacramento, California, Gregory L. Anderson, Dwyer Daly Brotzen & Bruno, Los Angeles, California, James William Hunt, Darrell Padgette, Fitzpatrick & Hunt, Tucker, Collier, Pagano, Aubert, LLP, Los Angeles, California, Richard Anthony Lazenby, Condon & Forsynth, Los Angeles, California, for the defendants-appellees.

---

## OPINION

B. FLETCHER, Circuit Judge:

Appellants bring this interlocutory appeal challenging the district court's grant of a motion to dismiss and a motion for judgment on the pleadings in Appellees' favor based on its conclusion that Appellant's state law claims are preempted by the Death on the High Seas Act (DOHSA). On September 16, 2009, we granted the petition for permission to appeal under 28 U.S.C. § 1292(b), giving us jurisdiction to consider this issue. We now affirm.

## I.

Appellants are the personal representatives and successors in interest to three United States Navy crewmen killed in a helicopter crash. In 2007, while performing training exercises from the USS Bonhomme Richard, the helicopter lost control and crashed into the Pacific Ocean approximately 9.5 nautical miles off the coast of Catalina Island, California.

Appellants filed a complaint in the Superior Court of California, County of Los Angeles, alleging that defects in the helicopter and its component parts caused the accident, and seeking damages for wrongful death. The complaint asserts causes of action for strict products liability, negligence, failure to warn, breach of warranty, and wrongful death and sur-

vival under California law and general maritime law. The case was then removed to federal court by Appellees Sikorsky Aircraft Corporation and Sikorsky Support Services, Inc. (collectively "Sikorsky"). Sikorsky filed a Rule 12(c) motion for judgment on the pleadings, asserting that DOHSA preempts certain causes of action brought by Appellants because the accident occurred "on the high seas beyond three nautical miles from the shore of the United States." *See* Fed. R. Civ. Pro. 12(c). The remaining Appellees filed a Rule 12(b)(6) motion to dismiss, alleging that certain of Appellants' claims failed to state a claim upon which relief could be granted based on DOHSA preemption.

The district court issued a ruling granting these motions, holding that DOHSA preempts Appellants' state law and general maritime causes of action for wrongful death. More specifically, the district court held that DOHSA applies to non-commercial aircraft accidents "beyond three nautical miles from shore," and that Presidential Proclamation No. 5928, 54 Fed. Reg. 777 (Dec. 27, 1988) ("Proclamation 5298"), which extended the territorial sea of the United States from three to twelve nautical miles from shore, did nothing to alter DOHSA's applicability. In its holding, the district court relied on then-Judge Sotomayor's dissent in the seminal case of *In re Air Crash Off Long Island, New York, on July 17, 1996*, 209 F.3d 200 (2d Cir. 2000) (hereinafter the "*TWA Flight 800 Case*"), and declined to follow the majority opinion. Pursuant to Appellants' request, the district court certified the decision for interlocutory appeal, as a case of first impression in our circuit.

## II.

We review the district court judgment de novo. *See Knieval v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005) (dismissal for failure to state a claim pursuant to Rule 12(b)(6) is reviewed de novo); *Dunlap v. Credit Protection Ass'n, L.P.*, 419 F.3d

1011, 1012 n.1 (9th Cir. 2005) (dismissal on the pleadings pursuant to Rule 12(c) is reviewed de novo).

## A.

**[1]** DOHSA provides a federal statutory remedy for wrongful death occurring at sea. The current version of the statute reads:

> When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative.

46 U.S.C. § 30302 (2006).[1]

**[2]** The parties do not dispute that, under this provision, any accident occurring within three nautical miles from the shore of the United States is not subject to DOHSA's remedial scheme. Nor do the parties dispute that DOHSA is applicable to all accidents occurring more than twelve nautical miles from the shore of any State. The parties disagree, however, as to whether DOHSA applies to the intermediate area between three and twelve nautical miles from United States shores, where the helicopter accident in this case occurred.[2]

---

[1]As originally enacted in 1920, DOHSA created a statutory remedy for wrongful deaths occurring "on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the territories or dependencies of the United States." 46 U.S.C. app. § 761 (1920) (current version at 46 U.S.C. § 30302 (2006)). A marine league is three nautical miles. *See TWA Flight 800 Case*, 209 F.3d at 201 n.2.

[2]The accident took place 9.5 miles off the coast of Catalina Island, California, placing it within the disputed area between three and twelve miles from California's shore.

Because DOHSA has been held to preempt all other remedies for wrongful death occurring on the high seas, *Dooley v. Korean Air Lines Co.*, 524 U.S. 116 (1998), this issue is of considerable importance to future victims of accidents occurring in this area.

Only one of our sister circuits has squarely addressed the issue of DOHSA's applicability to this area. In the *TWA Flight 800 Case*, the Second Circuit held that "high seas" as used in DOHSA refers to "those waters that lie beyond United States territorial waters, that is, international waters," 209 F.3d at 205, and that Proclamation 5928, by extending U.S. territorial waters from three to twelve nautical miles from shore, effectively changed the inner-boundary of DOHSA's applicability to twelve nautical miles from shore. *Id.* at 202, 215. Then-Judge Sotomayor, however, dissented, reasoning that Congress had no intention of imputing the definition of "high seas" as it was used for purposes of international law into the statute, but rather used the term in connection with "beyond a marine league" to make clear the geographical boundary (three nautical miles from shore) beyond which DOHSA should apply. *Id.* at 224. Under then-Judge Sotomayor's reasoning, DOHSA's scope was unaffected by Proclamation 5928, and its boundary remains at three nautical miles from U.S. shores.

The issue on which the *TWA Flight 800 Case* majority mainly relied, and which primarily divides the parties in our case, is the definition of the term "high seas" as it is used in DOHSA's text. Appellants argue that "high seas" is a political term that excludes all United States territorial waters. Appellees, on the other hand, argue that "high seas" is a geographical boundary referring to all waters beyond the low-water mark.

Unfortunately, the text of DOHSA does not reveal how "high seas" is defined for purposes of the statute, leaving it subject to different interpretations. Indeed, both sides find

support for their proffered definition in the relevant, pre-enactment case law. *Compare U.S. v. Scotland*, 105 U.S. 24, 29 (1881) (defining "high seas" as "where the law of no particular State has exclusive force, but all are equal"); *Deslions v. La Compagnie Generale Transatlantique*, 210 U.S. 95, 115 (1908) (same); *Old Dominion S.S. Co. v. Gilmore*, 207 U.S. 398, 403 (1907) (stating that "high seas" are "outside the territory, in a place belonging to no other sovereign"); *American Banana Co. v. United Fruit Co.*, 213 U.S. 347, 355 (1909) (stating "high seas" are "subject to no sovereign") *with Ross v. McIntyre*, 140 U.S. 453, 471 (1891) (noting that the " 'high seas' includes waters on the sea-coast without the boundaries of low-water mark," but also equating the term with the area "out of the jurisdiction of any particular state"); *The Manila Prize Cases*, 188 U.S. 254, 271 (1903) (same).

We conclude that we need not resolve this disagreement and assign a firm meaning to the term "high seas" in order to decide the issue of DOHSA's applicability. Instead, the question before us can be solved by looking to the plain text of the current statute.

## B.

**[3]** A plain reading of the statutory text leads to the conclusion that the boundary beyond which DOHSA applies remains at three nautical miles from U.S. shores. To review, the current version of DOHSA reads: "When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas *beyond 3 nautical miles* from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible." 46 U.S.C. § 30302 (2006) (emphasis added). The intended boundary of DOHSA's applicability, then, is plainly stated within the statute's text: DOHSA applies "beyond 3 nautical miles from the shore of the United States." Although the statute also uses the term "high seas" to describe the scope of the enacted remedial scheme, there is no indica-

tion that this term was meant to incorporate into the statute the independent and fluid political concept of U.S. territorial waters. Instead, a more natural reading indicates that the term "high seas" is defined for purposes of the statute by the explicitly stated geographic boundary of "beyond three nautical miles" from shore. Because the precise starting point of the "high seas" was apparently subject to dispute when DOHSA was enacted, see *supra*, it makes sense for us to construe the term in conjunction with the stated geographic boundary, or three nautical miles from shore. "High seas," however, has no apparent, independent geographical significance, other than perhaps to emphasize that the boundary beyond which DOHSA applies is the point where U.S. territorial waters ended at the time of enactment.

**[4]** Recent Congressional action amending the text of DOHSA lends further support to this interpretation. First, DOHSA was amended in 2006 so that the phrase "beyond a marine league" became "beyond three nautical miles," presumably to clarify the meaning of this somewhat archaic term. *See* Pub. L. 109-304, § 6 (Oct. 6. 2006), 46 U.S.C. § 30302 (2006). Notably, then, Congress reinforced the geographic boundary specified within DOHSA's text even after Proclamation 5928's extension of the U.S. territorial waters to twelve nautical miles from shore. Had Congress intended for the boundary of the statute to shift with the extension of territorial waters, the 2006 amendment clarifying DOHSA's boundary presumably would have reflected this shift. Instead, Congress reaffirmed that the geographic boundary of DOHSA remained at three nautical miles from shore, or where it was placed in the statute as originally enacted.

Second, even before the 2006 amendment, Congress amended DOHSA to exempt from its reach accidents involving commercial airlines. This amendment was signed into law on April 5, 2000, and is codified in 46 U.S.C. § 30307 (2006). It provides that DOHSA "does not apply if the death resulted from a commercial aviation accident occurring on the high

seas 12 nautical miles or less from the shore of the United States." *Id*. at § 30307(c).[3] This amendment was made retroactive to the day before the TWA Flight 800 accident occurred.

Notably, the wording of the amended statute, excepting from DOHSA's coverage all commercial accidents occurring "12 nautical miles or less" from shore, can be interpreted only to mean that a portion of the "high seas" as used in DOHSA lies within twelve nautical miles from shore. Otherwise, the phrase "on the high seas twelve nautical miles or less from the shore of the United States" would be entirely non-sensical. Moreover, a Congressional amendment exempting commercial airline accidents from DOHSA's reach would be wholly unnecessary unless DOHSA was otherwise applicable to the area specified in the amendment. Congress's decision to enact this change is therefore highly persuasive that DOHSA should be read to apply to the area between three and twelve nautical miles from U.S. shores.

In opposing this interpretation of DOHSA's text, Appellants recite the principle of statutory construction that "no clause, sentence, or word shall be superfluous, void, or insignificant." *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). According to Appellants, "high seas" and "beyond a marine league" must be given independent meaning and interpreted as two separate conditions, each of which must be met in order to trigger DOHSA's remedial scheme. This argument, however, is belied by the fact that, under Appellants' proffered definition, the DOHSA Congress understood "beyond a marine league" and "high seas" to be functionally equivalent. We cannot assume, therefore, that Congress intended the term "high seas" to impose a requirement independent of the clarifying geographic phrase that immediately follows it. Furthermore, the interpretation of "high seas" for which Appellants

---

[3]Congress also amended available remedies for commercial aviation accidents beyond twelve nautical miles. 46 U.S.C. § 30307(b).

advocate would subsume and render meaningless the geographic term "beyond three nautical miles". Thus, not only does such a reading fail to give the geographic phrase any independent meaning, but it also leads to an illogical result, as three nautical miles from shore is the only geographic boundary explicitly contained within the statute's text.

Therefore, a plain reading of DOHSA's current text, including the recently enacted amendments, compels the conclusion that DOHSA's boundary remains at three nautical miles from the shore of the United States. While acknowledging that this is the opposite conclusion from that reached by the Second Circuit, we note that the *TWA Flight 800 Case* came down before the 2000 and 2006 DOHSA amendments were enacted. That court did not have the benefit of the clarity that these amendments brought to our interpretation of the statute. Accordingly, both the majority and the dissent relied heavily on legislative history and Congressional purpose to reach their conclusions. Because subsequent amendments have further clarified how DOHSA's text should be read, we find such analysis to be unnecessary. *BedRoc Ltd. v. United States*, 541 U.S. 176, 187 n.8 (2004) (courts "resort to legislative history only when necessary to interpret ambiguous statutory text"); *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 808 n.3 (1989) ("Legislative history is irrelevant to the interpretation of an unambiguous statute.").

## C.

Even if a plain reading of the current statute did not yield such a clear result, we are not persuaded that Proclamation 5928 was intended to alter DOHSA's original boundary. In 1988, President Ronald Reagan issued Proclamation 5928, which stated "[t]he territorial sea of the United States henceforth extends to 12 nautical miles from the baselines of the United States determined in accordance with international law." Proclamation No. 5928, 54 Fed. Reg. 777 (Dec. 27, 1988). According to Appellants, this Proclamation effectively

altered the scope of DOHSA and shifted its geographical trigger from three nautical miles to twelve nautical miles from shore. There are, however, several problems with this theory.

**[5]** First, the Proclamation explicitly states that it does not "extend[ ] or otherwise alter[ ] existing Federal or State law or any jurisdiction, rights, legal interests, or obligations derived therefrom." *Id.* Indeed, the legal opinion issued by the Department of Justice Office of the Legal Counsel ("OLC") in connection with Proclamation 5928 highlights this limitation. According to the OLC, in determining whether a Presidential Proclamation affects a particular statute, one must determine whether Congress "intended" the statute to be so affected. Douglas W. Kmiec, *Legal Issues Raised by the Proposed Presidential Proclamation to Extend the Territorial Sea*, 1 TERR. SEA. J. 1, 23 (1990). Notably, the OLC opined that those statutes "that use[ ] the term 'territorial sea' but then define[ ] it as 'three miles seaward from the coast of the United States' " remain unaffected by Proclamation 5928. *Id.* Because DOHSA defines its boundary as "three nautical miles" from U.S. shores, there is, under the OLC's reasoning, a presumption that Proclamation 5928 did nothing to alter it.

Second, Congress specifically chose to amend certain maritime statutes to incorporate the extension of U.S. territorial waters enacted through Proclamation 5928. *See* Coast Guard Authorization Act of 1998, Pub. L. No. 105-383, § 301 (1998) (amending the Ports and Waterways Safety Act to comport with Proclamation 5928). DOHSA, however, is notably absent from mention as one of the congressionally amended statutes.

**[6]** Finally, though we do not decide the issue, we remain doubtful that the President would have the authority to alter the remedial scheme set forth in DOHSA through a proclamation. The President has the authority to extend or contract the territorial sea pursuant to his constitutionally delegated power over foreign relations. *See* Kmiec, *supra*, at 3541. The power

to create and alter the scope of federally-created remedies for victims of wrongful acts, however, remains squarely within Congress. There is nothing in the record suggesting that Congress intended to delegate to the executive branch the power to determine the scope of DOHSA, nor did Congress itself act to alter DOHSA's scope in accordance with the Proclamation 5928. Therefore, basic principles of separation of powers counsel against the conclusion that Proclamation 5928 implicitly altered the scope of a congressionally defined remedial scheme.

## III.

The precise question before us, whether DOHSA applies to the area between three and twelve nautical miles from United States shores, can be resolved by looking at the text of DOHSA, which explicitly places its boundary at three nautical miles from United States shores. Congressional action amending DOHSA also reveals Congress's continuing understanding that DOHSA applies to the area between three and twelve nautical miles from shore, even after the extension of U.S. territorial waters. Therefore, we conclude that DOHSA applies to all waters beyond three nautical miles from United States shores. The helicopter crash in this case is governed by DOHSA's remedial scheme.

**AFFIRMED.**