John COMINOTTO, Plaintiff/Appellant,

v.

UNITED STATES of America, Defendant/Appellee.

No. 85–2120.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1986.

Decided Oct. 17, 1986.

---

Eugene Oreck, Oreck & Oreck, Oakland, Cal., for plaintiff/appellant.

George Christopher Stoll, Asst. U.S. Atty., San Francisco, Cal., for defendant/appellee.

Before CHOY, Senior Circuit Judge, ALARCON and BEEZER, Circuit Judges.

CHOY, Senior Circuit Judge:

John Cominotto appeals the district court's order granting the Government's motion to dismiss his Federal Tort Claims Act (FTCA) claim. Because Cominotto's tort action is barred by the foreign country exception of the FTCA, we affirm.

### FACTUAL BACKGROUND

In the early 1970's, Cominotto was involved in the drug trade in Thailand. In 1976 he became a Drug Enforcement Agency ("DEA") informant, and was instrumental in the arrest and conviction of a leading Thai drug trafficker. While working for the DEA, Cominotto supplied to that agency evidence about the counterfeiting of $20 United States Federal Reserve Notes in Thailand. This evidence aroused the interest of the United States Secret Service, which contacted Cominotto in 1977. Comin-

otto met with the Secret Service in California in February 1977, at which time Cominotto provided them with information regarding counterfeiting, and stated that he would be willing to go to Bangkok to help with an investigation.

In early 1978, Cominotto contacted the Secret Service and told them that he was traveling to the Far East, and that he was willing to participate in undercover work if he was needed. The Secret Service told Cominotto that arrangements for such work would have to be made through the Honolulu field office, and that he should contact the Honolulu office while en route to Asia. Cominotto left San Francisco for Manila on May 3, 1978. His sole purpose for the trip was to visit his brother in Manila and his wife and child in Japan. Cominotto had a short interview with a Secret Service agent in Honolulu, at which time he was advised not to initiate a counterfeiting investigation.

In July 1978, Cominotto had two meetings in Manila with two Secret Service agents about a possible Thailand investigation. However, no specific instructions regarding Cominotto's entry into Thailand were given to Cominotto until he met with the two agents in Kuala Lumpur, Malaysia, on July 27, 1978. At this time Cominotto was instructed to meet suspects only in the daytime, and in public places. In addition, he was told not to enter an automobile, or go out of the city of Bangkok, with any suspects.

On August 3, 1978, shortly after arriving in Thailand, Cominotto arranged to meet three suspects in front of a Bangkok hotel at night. They arrived in a car. Cominotto got into the car, and went with the suspects to a small farmhouse outside of Bangkok. At one point during the evening, Cominotto felt that he was in danger, so he fled the car and was shot in the leg.

Cominotto brought an action against the Government for the allegedly negligent acts of the Secret Service in planning the Thailand investigation. He sought damages under the FTCA, 28 U.S.C. § 1346(b) and §§ 2671–2680 (1982). The case was tried without a jury before the United States District Court for the Northern District of California. After Cominotto presented his evidence, the Government moved to dismiss under Fed.R.Civ.P. 41(b) on the ground that Cominotto had shown no right to relief. The district court granted this motion. Cominotto appeals.

## DISCUSSION

### A. *The Federal Tort Claims Act*

■ The United States, as a sovereign entity, is immune from suit unless it has consented to be sued. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). Waiver of immunity must be demonstrated by the party suing the United States. *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir.1983), cert. denied sub nom. *Holloman v. Clark*, 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984).

Under the FTCA, the Federal Government may be sued in tort for damages. Specifically, the Government may be sued "for injury ... caused by the negligent or wrongful act or omission of any employee of the Government ... under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). However, the FTCA is a limited waiver of sovereign immunity, and 28 U.S.C. § 2680 excludes certain categories of torts from its coverage. The courts have no jurisdiction over any claim excluded by this provision. *Morris v. United States*, 521 F.2d 872, 874 (9th Cir.1975).

### B. *The Foreign Country Exception*

■ The FTCA states that the Government is not liable in tort for damages for "any claim arising in a foreign country." 28 U.S.C. § 2680(k). This provision was included because Congress did not want to subject the United States to suits under the laws of foreign powers. *United States v. Spelar*, 338 U.S. 217, 221, 70 S.Ct. 10, 12, 94 L.Ed. 3 (1949). Under section 2680(k), a

tort claim arises in the place where the negligent act or omission occurs, not necessarily at the site of the injury or the place where the negligence has its "operative effect." *Sami v. United States*, 617 F.2d 755, 762 (D.C.Cir.1979); *Roberts v. United States*, 498 F.2d 520, 522 n. 2 (9th Cir.), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974).

Cominotto argues that "the government's negligence lies in the solicitation of [Cominotto] by the Secret Service and the inadequacy of the government's precautions for [Cominotto's] safety...." Cominotto contends that this negligence occurred in the United States because the early contacts between Cominotto and the Secret Service took place in the United States, and because Cominotto's situation was discussed there among agents in several of the Secret Service's offices.

### C. *Headquarters Claim*

Cominotto's claim resembles what has been designated a "headquarters claim." *Eaglin v. United States, Department of the Army*, 794 F.2d 981, 982–83 (5th Cir. 1986); *Beattie v. United States*, 756 F.2d 91, 96–97 (D.C.Cir.1984). Such claims typically involve allegations of negligent guidance in an office within the United States of employees who cause damage while in a foreign country, or of activities which take place within a foreign country. *See, e.g., Eaglin*, 794 F.2d 981 (claim that Government in U.S. failed to warn plaintiff of ice hazards in West Germany); *Beattie*, 756 F.2d at 96–97 (claim that air traffic controllers in Antarctica were negligently trained and supervised by officials in Washington, D.C.); *Sami*, 617 F.2d at 761–63 (claim that acts by officials in U.S. resulted in wrongful detention of plaintiff in Germany by German officials).

■ This circuit has recognized the availability of headquarters claims under the FTCA. *Leaf v. United States*, 588 F.2d 733 (9th Cir.1978) (claim that officials in U.S. negligently planned and executed drug investigation in Mexico). Under section 2680(k), a tort claim "arises" where a

negligent act occurs, if that act proximately causes the damage. *Id.* at 735. Thus, a headquarters claim exists where negligent acts in the United States proximately cause harm in a foreign country. *See id.* at 736; *see also Eaglin*, 794 F.2d at 983 (headquarters claim must establish some "plausible proximate relationship between the alleged negligence in [the United States] and the resulting damage in a foreign country"). Cominotto has failed to establish such a proximate connection.

### D. *Proximate Cause*

■ The determination of proximate cause is an issue of fact. *Leaf*, 588 F.2d at 736. Factual findings of the district court are reviewed under a clearly erroneous standard. *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The district court found that Cominotto's flight from the automobile which took him out of Bangkok was the "sole and proximate cause of his injuries."

It is clear that Cominotto intentionally violated his Secret Service instructions: He met suspects at night, entered their automobile, left Bangkok, and headed for a meeting place which was not public. By violating his instructions, Cominotto placed himself in a very dangerous situation, a situation from which he soon felt the need to extricate himself. We are unable to conclude that the district court was clearly erroneous in finding that Cominotto, by fleeing from a dangerous situation in which he had placed himself, was the sole and proximate cause of his own injuries. Cominotto broke any chain of causation which might have existed between Secret Service activities in the United States and Cominotto's investigative approach in Thailand.

■ There is, moreover, nothing in the record to indicate any plausible proximate connection between Secret Service activities in the United States and the shooting of Cominotto in Thailand. The Secret Service's most significant contacts with Comi-

notto, and the planning of his Thailand investigation, occurred primarily outside of the United States, in Manila and Kuala Lumpur. The impact of Secret Service activities in the United States on the Thailand operation was too attenuated to support a headquarters claim in this case. For this reason, and because Cominotto was the sole and proximate cause of his own injuries, Cominotto's claim necessarily comes under the foreign country exception of the FTCA.

## CONCLUSION

Because the Government's activities in the United States had no proximate causal connection to the injuries Cominotto suffered in Thailand, the district court lacked subject matter jurisdiction to hear the FTCA claim. We therefore affirm the district court's dismissal of Cominotto's action.

AFFIRMED.