**Steven John DONAHUE, Johanna Villani and Ian Donahue–Villani, an infant by his mother and natural guardian, Johanna Villani, Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, United States Drug Enforcement Administration and the United States of America, Defendants.**

**No. 88 Civ. 4368 (JMC).**

United States District Court, S.D. New York.

Nov. 7, 1990.

Steven John Donahue, pro se.

Otto G. Obermaier, U.S. Atty. for S.D. N.Y., New York City by Claude M. Millman, for defendants.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction is denied. Fed.R.Civ.P. 12(b)(1). Defendants' motion for summary judgment is denied. Fed.R.Civ.P. 56.

## BACKGROUND

On April 4, 1983, Steven John Donahue entered into a plea agreement with the United States Attorney for the District of New Jersey, in which he agreed to truthfully disclose all information he had regarding marijuana and hashish cases in exchange for pleading guilty to certain drug related charges. Shortly thereafter, Donahue began working as a confidential informant for the United States Drug Enforcement Administration [the "DEA"]. In 1984, DEA Special Agent Jack Short, the assistant agent in charge of the Newark Division of the DEA, was assigned to work undercover with Donahue in an attempt to develop cases against several large scale Lebanese heroin and hashish dealers. On or about December 8, 1984, Donahue and Agent Short travelled to Athens, Greece to attend certain undercover meetings. Donahue's wife and son also went to Athens. Donahue alleges that they accompanied him as part of his cover as a drug dealer. During the undercover meetings in Greece, arrangements were made to purchase heroin from the Lebanese dealers, somewhere in the Middle East area.

A few days after the meeting, the Donahues went to Beirut, Lebanon. The Donahues allege that they travelled to Lebanon under the direction and supervision of Agent Short as part of the undercover operation to purchase heroin from the Lebanese drug dealers. The Donahues further allege that upon their arrival in Beirut they were seized by a military group and held hostage. Donahue asserts that after several months he was permitted to leave his captors to raise ransom money for his family's freedom. He alleges that he returned to Lebanon with $300,000 and that his wife and child were released on July 28, 1985, while he was held until July 1, 1986. The Donahues allege that while they were held hostage in Lebanon they were captured by

rival militias and subjected to physical and mental tortures.

On June 8, 1988, plaintiffs filed the instant action under the Federal Tort Claims Act ["FTCA"], 28 U.S.C. §§ 1346(b), 2671 *et seq.* (1988), alleging that the United States Department of Justice, the DEA and the United States of America [collectively the "Government"] were negligent in sending them to Lebanon as part of the undercover operation. The Government now moves under Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the complaint for lack of subject matter jurisdiction or, in the alternative, for summary judgment pursuant to Rule 56.

## DISCUSSION

### I. *Motion to Dismiss*

The United States, as a sovereign entity, may not be sued unless it has consented to be sued by expressly waiving its sovereign immunity. *See Carelli v. IRS*, 668 F.2d 902, 904 (6th Cir.1982). The existence of such consent is a prerequisite for jurisdiction. *See United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983).

Under the FTCA, the federal government has consented to be sued in tort. Specifically, section 1346(b) provides in relevant part:

> The district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury ... caused by the negligent or wrongful act or omission of any employee of the Government ... under circumstances when the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (1988). However, the FTCA is a limited waiver of sovereign immunity because certain categories of torts, specified in 28 U.S.C. § 2680, are explicitly exempted from its coverage. The district courts lack subject matter jurisdiction to hear any claim falling within one of the exceptions. *See Morris v. United States*, 521 F.2d 872, 874 (9th Cir.1975).

Pursuant to section 2680(k) of the FTCA, "[a]ny claim arising in a foreign country" is exempted from the section 1346(b) waiver of sovereign immunity. 28 U.S.C. § 2680(k) (1988). Thus, the Government may not be held liable in tort with respect to its negligent acts or omissions arising in a foreign country. The exception exists, in part, because liability under the FTCA is determined under the law of the place where the negligent act or omission occurs. *See id.* The Supreme Court explained that while "Congress was ready to lay aside a great portion of the sovereign's ancient and unquestioned immunity from suit, it was unwilling to subject the United States to liabilities depending upon the laws of a foreign power." *United States v. Spelar*, 338 U.S. 217, 221, 70 S.Ct. 10, 12, 94 L.Ed. 3 (1949).

In construing the foreign country exception to the FTCA, federal courts have consistently held that despite American involvement, tort claims arising from government negligence occurring on the grounds of a foreign American military base, an American embassy and a foreign land occupied by United States military forces are claims arising in a foreign country. *See, e.g., Roberts v. United States*, 498 F.2d 520, 522 (9th Cir.), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *Meredith v. United States*, 330 F.2d 9, 10 (9th Cir.), *cert. denied*, 379 U.S. 867, 85 S.Ct. 137, 13 L.Ed.2d 70 (1964); *Callas v. United States*, 253 F.2d 838, 840 (2d Cir.), *cert. denied*, 357 U.S. 936, 78 S.Ct. 1384, 2 L.Ed.2d 1550 (1958). Thus, if the "negligent act proximately causing damage occurs outside the United States, section 2680(k) bars assertion of a claim against the Government...." *Knudsen v. United States*, 500 F.Supp. 90, 93 (S.D.N.Y.1980).

However, a FTCA claim arises in the United States if the negligent act or omission takes place in the United States even though the negligence has its "operative effect" in a foreign country. *See Sami v. United States*, 617 F.2d 755, 762 (D.C.Cir. 1979); *Leaf v. United States*, 588 F.2d 733,

735–36 (9th Cir.1978); *Roberts*, 498 F.2d at 522 n. 2. In these claims, which have been characterized as "headquarters claims," subject matter jurisdiction under the FTCA is predicated on allegations that a negligent failure to warn, instruct or train occurred in the United States proximately causing damage or injury abroad. For example, in *Eaglin v. United States Dep't of Army*, 794 F.2d 981 (5th Cir.1986), the court declined to assert jurisdiction under the FTCA where the alleged negligent failure to warn of hazardous weather conditions in Germany during plaintiff's training in the United States was not the proximate cause of plaintiff's injury in West Germany. *See id.* at 982. On the other hand, in *Beattie v. United States*, 756 F.2d 91 (D.C. Cir.1984), the court asserted jurisdiction over claims based on plaintiffs' allegations that the negligent selection, training and supervision of air traffic controllers by officials in Washington, D.C. caused the airplane to crash in Antarctica. *See id.* at 96. Finally, in *Sami*, jurisdiction existed under the FTCA for plaintiff's claim of false arrest which took place in Germany because the instructions to make the arrest occurred in the United States. *See* 617 F.2d at 757–58. Thus, a claim is not barred by section 2680(k) where the tortious conduct occurs in the United States, but the injury is sustained in a foreign country.

> Plaintiffs' complaint alleges as follows:
> 13. Defendant DEA and more particularly Jack Short, special agent-in-charge of plaintiff Donahue knew, accepted and endorsed Donahue's activities on behalf of DEA. On December 9, 1984, Donahue went to the Athens Hilton with DEA agent Jack Short to meet with Lebanese drug traffickers and producers for the purpose of arranging the purchase of 100 kilos of heroin to be picked up at a subsequent time in the Middle East region.
> 14. On December 21, 1984, he [Donahue] continued the DEA mission by going to Beirut, Lebanon with the approval and under the direction of Agent Jack Short. He arrived in Lebanon on that date with his wife and child.

Complaint, at ¶¶ 13, 14, 88 Civ. 4368 (JMC) (S.D.N.Y. June 8, 1988). When presented with a motion to dismiss, the Court is required to accept all the facts alleged in the complaint as true. *See State of New York Dist. Attorney Investigators Police Benevolent Assoc., Inc. v. Richards*, 711 F.2d 8, 11 (2d Cir.1983). Plaintiffs allege that the Governments' tortious conduct consisted of sending them to Lebanon as part of the DEA investigation. The Government argues that the complaint is deficient in that it fails to allege facts upon which subject matter jurisdiction can be based.

Whether or not the Court has jurisdiction over the dispute depends on where the Government's allegedly negligent act took place. Plaintiffs' allegations in the complaint state that during the undercover meeting in the Athens Hilton, Agent Short, on behalf of the DEA, arranged for the Donahues to travel to Lebanon. Based on these allegations, the alleged wrongdoing took place during the undercover meeting in Athens, Greece. Thus, according to plaintiffs' allegations in the complaint, the Court lacks jurisdiction under the foreign claims exception to the FTCA.

Although the injury occurred outside of the United States, the Court would have jurisdiction under the FTCA provided that the Government's negligent act occurred within the United States. However, plaintiffs' allegations in the complaint are also insufficient to assert a headquarters claim. The Ninth Circuit's opinion in *Cominotto v. United States*, 802 F.2d 1127 (9th Cir.1986) is instructive. In *Cominotto*, plaintiff was a DEA informant who agreed with the United States Secret Service to go to Bangkok, Thailand to assist with a counterfeiting investigation. *See id.* at 1128–29. Cominotto met with a secret agent in Honolulu, who advised him not to begin an investigation at that time. Thereafter, Cominotto met with two Secret Service agents in Malaysia, who instructed him to meet the suspects only in the daytime and in public places. Cominotto arranged a meeting with three suspects at night, disregarding the agents' instructions, and was subsequently injured by one of the suspects later that evening. *See id.* at 1129. He then brought suit against the Government for

the allegedly negligent acts of the Secret Service in planning the Thailand investigation. The Ninth Circuit rejected Cominotto's headquarters claim on the ground that he failed to establish that there was any connection between the allegedly negligent acts in the United States and the injury in Bangkok. *See id.* at 1130. The court reasoned that since the planning of the investigation occurred primarily outside of the United States, the Secret Service activities within the United States were too far removed to support a headquarters claim. *See id.*

Plaintiffs' complaint in the instant action, as in *Cominotto,* merely alleges that while he was in Athens, Agent Short directed him to go to Lebanon in furtherance of the DEA mission. However, in plaintiffs' memorandum of law submitted in opposition to the Government's motion, plaintiffs repeatedly allege that the plan to arrest the Lebanese drug dealers originated in the United States. Moreover, plaintiffs allege that from the beginning the plan included sending the Donahues to Lebanon. The Donahues further state that when Agent Short directed them to go to Lebanon, while they were in Athens, he was acting in furtherance of instructions that he received from DEA officials in the United States.

Clearly, had these allegations appeared in the complaint they would have been sufficient to allege a headquarters claim. A motion to dismiss under Rule 12(b) tests the sufficiency of the allegations in the complaint. However, the Court's obligation to liberally construe a *pro se* complaint is well established. *See, e.g., Lyons v. Powell,* 838 F.2d 28, 31 (1st Cir.1988) (en banc). When reviewing a *pro se* complaint, the court must hold the allegations asserted therein to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam); *accord Hohman v. Hogan,* 597 F.2d 490, 492 (2d Cir.1979). The Court's duty to adopt a generous attitude when evaluating a *pro se* complaint supports the Court's decision to consider the allegations in the Donahues' opposition papers. The policy reasons favoring liberal construction

of *pro se* pleadings warrant the Court's consideration of the allegations contained in plaintiffs' memorandum of law, at least where those allegations are consistent with the allegations in the complaint. In addition, the allegations in plaintiffs' opposition papers merely provide in greater detail the circumstances surrounding the Donahues' trip to Lebanon; thus, it is not wholly unsurprising that they were omitted from the complaint.

Reading both the complaint and plaintiffs' memorandum of law together, it is clear that plaintiffs sufficiently allege a basis for jurisdiction under the FTCA. Plaintiffs' allegations establish a headquarters claim insofar as the act of negligence is alleged to have occurred in the United States. Accordingly, the Governments' motion to dismiss for lack of subject matter jurisdiction is denied. Fed.R.Civ.P. 12(b)(1).

## II. *Motion for Summary Judgment*

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that a district court shall grant a motion for summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party satisfies its burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). To meet its burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The Government contends that summary judgment should be granted because there is no evidence to support plaintiffs' claim that the Government directed them to travel to Lebanon as part of the plan to arrest

the Lebanese drug traffickers. In support of its contention, the Government submits affidavits from Agent Short and other DEA officials stating that Donahue had often requested that he be allowed to go to Lebanon, but they repeatedly told him that the DEA would not authorize the trip due to the dangerous conditions in Lebanon. According to the DEA officials, Donahue continued to express a desire to go to Lebanon, even without the DEA's authorization.

Donahue contends his trip to Lebanon was made pursuant to the original plan to arrest certain Lebanese drug traffickers. To support his contention, Donahue points to various actions that he took in the United States which he argues indicate the Government's intention to send him and his family to Lebanon. For example, he points to telephone calls that he made while in the United States to Lebanese drug dealers in which he told them that he was planning to visit their country. The Government contends that all of the evidence presented by the Donahues merely indicates their intention to go to Lebanon and fails to reflect an intention by the Government to send the Donahues to Lebanon.

It is clear that conflicting inferences can be drawn from the evidence presented. While the Government asserts that the evidence presented by the Donahues only shows that they intended to go to Lebanon, the evidence is also consistent with a decision by the Government to send them to Lebanon as part of its scheme to arrest Lebanese drug dealers. Since the allegations indicate that there is a genuine issue of material fact to be resolved concerning whether the Government was involved in the Donahues' venture to Lebanon, the Government's motion for summary judgment is denied.

## CONCLUSION

The Court deems plaintiffs' complaint amended to reflect the allegations contained in its memorandum of law. Accord-

ingly, defendants' motion to dismiss is denied. Fed.R.Civ.P. 12(b)(1). Defendants' motion for summary judgment is denied. Fed.R.Civ.P. 56.

Defendants are ordered to file an answer to plaintiffs' complaint within twenty (20) days from the filing of this Memorandum and Order.

Upon reconsideration of plaintiffs' application for appointment of counsel, the Court directs that counsel be assigned to plaintiffs in accordance with the random selection procedures of the Pro Bono Panel.[1] 28 U.S.C. § 1915(d) (1988). The Court directs that upon filing of defendants' answer all proceedings shall be stayed for six (6) months until counsel is appointed.

SO ORDERED.

---

**1.** In a Memorandum and Order dated October 6, 1989, the Court initially denied plaintiffs' application for appointment of counsel. However, the Court has reconsidered plaintiffs' application in light of plaintiffs' memorandum of law in opposition to the Government's motion to dismiss, which the Court did not have the benefit of when previously deciding the application for the appointment of counsel.