**Sandra Jean SMITH,
Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

No. 89–35088.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1990.

Decided May 1, 1991.

David Gernant, Portland, Or., for plaintiff-appellant.

Mark B. Stern, Appellate Staff Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before GOODWIN, FLETCHER and FERNANDEZ, Circuit Judges.

GOODWIN, Circuit Judge:

Sandra Jean Smith appeals the Rule 12 dismissal of her Federal Tort Claims Act (FTCA) action for the wrongful death of her husband. Smith's action alleged negligent acts or omissions by the United States in Antarctica. The district court dismissed her claim under the "foreign country" exception to the statute. *Smith v. United States*, 702 F.Supp. 1480 (D.Or.1989). We affirm.[1]

I

"The United States, as a sovereign entity, is immune from suit unless it has consented to be sued." *Cominotto v. United States*, 802 F.2d 1127, 1129 (9th Cir.1986) (citing *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983)). Under the FTCA, the United States has consented to be sued for tort damages "caused by the negligent or wrongful act or omission of any employee of the Government...." 28 U.S.C. § 1346(b) (1982). The FTCA, however, is a limited waiver of sovereign immunity under which certain categories of torts are specifically excluded. *See Grunnet v. United States*, 730 F.2d 573, 574–75 (9th Cir.1984); 28 U.S.C. § 2680 (listing fourteen exceptions to section 1346(b)). Courts are without jurisdiction over any excluded claim. *See Cominotto*, 802 F.2d at 1129.

Under the FTCA, the United States retains sovereign immunity for "[a]ny claim

---

1. The facts of this case, as stipulated by the parties, are provided in Exhibit A to the district court's opinion. *Smith,* 702 F.Supp. at 1483–84.

arising in a foreign country." 28 U.S.C. § 2680(k). The central question in this case is whether Antarctica, a sovereignless region without civil tort law,[2] is a foreign country within the meaning of Section 2680(k).[3]

The district court recognized that the words "foreign country" are not self-defining and determined that Congress did not intend to waive sovereign immunity for torts alleged to have been committed by government employees outside the territorial jurisdiction of the United States. We agree.

The FTCA does not define the term "foreign country." *See* 28 U.S.C. § 2680(k) (1982). *See also Fernandez v. Brock*, 840 F.2d 622, 632 (9th Cir.1988) (the starting point in determining Congress's intent is the language itself). Moreover, as we have acknowledged, the term "foreign country" is capable of different meanings. *Meredith v. United States*, 330 F.2d 9, 10 (9th Cir.) ("[t]he words 'foreign country' are not words of art, carrying a fixed and precise meaning in every context"), *cert. denied*, 379 U.S. 867, 85 S.Ct. 137, 13 L.Ed.2d 70 (1964); *see also United States v. Spelar*, 338 U.S. 217, 223, 70 S.Ct. 10, 13, 94 L.Ed. 3 (1949) (Frankfurter, J., concurring) (to assume that the term "foreign country" is "self-defining, not at all involving a choice of judicial judgment, is mechanical jurisprudence."); *Burnet v. Chicago Portrait Co.*, 285 U.S. 1, 5, 52 S.Ct. 275, 277, 76 L.Ed. 587 (1932) ("[t]he word 'country,' in the expression 'foreign country' is ambiguous"); *Beattie*, 756 F.2d at 109–110 (Scalia, J., dissenting) (discussing the different possible definitions of the term "foreign country").

try"). Because Congress's intent is not clear from the statute's language, we must ascertain a definition for "foreign country" that is compatible with the context and purpose of the FTCA. *Meredith*, 330 F.2d at 10 (in defining "foreign country" for purposes of the FTCA, "[i]t is necessary to consider the object of the enactment and to construe the expression 'foreign country' so as to achieve, and not defeat, its aim") (quoting *Burnet*, 285 U.S. at 7, 52 S.Ct. at 277).

We are aided in our analysis by the comprehensive opinions of the D.C. Circuit in *Beattie*. Faced with this same question, the court explored the relevant legislative history and case law, and concluded that Antarctica is not a "country" and therefore, as a stateless area, could not be a foreign country. 756 F.2d at 98. The dissent shifted the focus of the inquiry from the interesting but abstract question of what is a country, to the purpose of the FTCA. *Id.* at 107 (Scalia, J., dissenting).

## II

We agree with the approach and conclusions of then Judge Scalia and hold that the FTCA does not apply to claims arising in Antarctica. To hold otherwise would render two other provisions of the FTCA nonsensical and require us to create rules governing liability for tortious acts and omissions in Antarctica. *See Central Mont. Elec. Power Co-op., Inc. v. Administrator, Bonneville Power Admin.*, 840 F.2d 1472, 1478 (9th Cir.1988) (we "avoid any statutory interpretation that renders any section superfluous and does not give

2. "Antarctica can properly be characterized as something of an international anomaly." *Beattie v. United States*, 756 F.2d 91, 93 (D.C.Cir. 1984). Under various theories of ownership, seven countries (Argentina, Australia, Chile, France, Great Britain, New Zealand, and Norway), have asserted claims to approximately eighty percent of the continent. *See* Bederman, *Exploring the Foreign Country Exception: Federal Tort Claims in Antarctica*, 21 Vand.J.Int'l L. 731, 754–55 & nn. 121–25 (1988). These claims, however, are suspended by the terms of the Antarctica Treaty, 12 U.S.T. 795, T.I.A.S. No. 4780, 402 U.N.T.S. 71 (Dec. 1, 1959), to which the United States is party. Article 4 of the Treaty states that while the treaty is in force no

act shall "constitute a basis for asserting, supporting or denying a claim to territorial sovereignty in Antarctica." *Id.* at art IV.

3. It is undisputed that Smith's cause of action arose from alleged acts or omissions by the United States in Antarctica. Smith's claim is not a "headquarters" claim, which typically involves an allegation of negligent guidance or conduct within the United States resulting in damage to the plaintiff in a foreign country. *Cf. Leaf v. United States*, 588 F.2d 733 (9th Cir.1978) (recognizing the availability of headquarters claims under the FTCA).

effect to all of the words used by Congress"); *Hughes Air Corp. v. Public Util. Com'n,* 644 F.2d 1334, 1338 (9th Cir.1981) (it is a "basic rule of statutory construction that one provision should not be interpreted in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless").

The venue provision of the FTCA provides that a tort claim against the United States "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b) (1982). As Judge Scalia wrote in his dissent:

> If, as the appellees assert, 'foreign country' means only 'foreign state,' and sovereign immunity has therefore been waived with respect to torts occurring in stateless regions such as Antarctica, then the venue provision for those regions makes no sense ...

*Beattie,* 756 F.2d at 110 (Scalia, J., dissenting). While Smith, as the personal representative of a deceased victim, is able to lay venue in her state of residence because it has a district court, venue would not exist if the plaintiff happened to reside outside the United States. If we were to find that Antarctica is not a foreign country, a resident of New Zealand, or of any other country,[4] injured by the acts or omissions of a U.S. employee in Antarctica, would find sovereignty waived but no venue in which to proceed against the United States.[5] It is unlikely that Congress intended to create a tort remedy in cases for which no venue exists.

A further indication that the FTCA was not intended to apply in Antarctica is the choice-of-law problem presented in extending the Act's provisions to that region.

The statute imposes liability "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1982). *See also Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962) ("We believe that it would be difficult to conceive of any more precise language Congress could have used to command application of the law of the place where the negligence occurred than the words it did employ in the Tort Claims Act"). As a stateless area over which a number of treaty powers have specifically declined to assert claims of sovereignty, Antarctica has no tort law. *See* Antarctica Treaty, *supra* at art. IV(2); *see also Beattie,* 756 F.2d at 111 (Scalia, J., dissenting).

We decline to adopt the D.C. Circuit's conclusion that because "§ 1346(b) leads the court to a place where there is no civil tort law to apply" the court must use its own choice-of-law rules to determine which law applies. *Beattie,* 756 F.2d at 104–05. *See Ducey v. United States,* 713 F.2d 504, 508 n. 2 (9th Cir.1983) (in applying "the law of the place where the act or omission occurred" pursuant to section 1346(b), the whole law "including the choice of law principles" apply) (citing *Richards,* 369 U.S. at 11, 82 S.Ct. at 592). We agree instead with Judge Scalia's conclusion that this choice-of-law dilemma evidences "that the FTCA no more envisions suits for torts occurring in stateless foreign regions than it does suits for torts occurring in foreign sovereignties." *Beattie,* 756 F.2d at 111 (Scalia, J., dissenting).

In a case arising out of an act occurring in the United States Embassy in Bangkok, we held that the foreign country exception precluded the action, adding by way of obiter that: "No authority has been cited

---

**4.** In *Spelar,* the Court noted that the original draft of the "foreign country" exception "exempted all claims 'arising in a foreign country in behalf of an alien' [but that] at the suggestion of the Attorney General, the last five words were excised ... so that the exemption [did not] turn upon the fortuitous circumstances of the injured party's citizenship." 338 U.S. at 220, 70 S.Ct. at 11 (quoting Hearings, H.R. 5373 and H.R. 6463, 77th Cong., 2d Sess., 29, 35, 66). The United States is thus open to suit by foreign citizens under the FTCA.

**5.** The D.C. Circuit was able to avoid this problem in *Beattie,* where the plaintiffs were residents of Great Britain and New Zealand, through the concept of "pendent venue" because the plaintiffs also sought relief under a "headquarters" claim alleging damages resulting from the negligence of U.S. officers in Washington, D.C. *Beattie,* 756 F.2d at 100–04. The lack of venue problem cannot be so easily avoided in many cases, however.

indicating that it is the duty of the federal courts to create rules governing liability for tortious acts and omissions on the premises of American embassies and consulates abroad ... and obviously our embassy at Bangkok has no tort law of its own." *Meredith*, 330 F.2d at 10 (citations omitted). Likewise, while the United States conducts activity in Antarctica, both through instrumentalities of space and defense agencies and through private contractors who employ workers and provide for on-the-job injuries, we have been cited to no legislative history which suggests that the federal courts should create substantive or choice-of-law rules governing liability for tortious acts and omissions in Antarctica.

### III

■ Even if we were to adopt the view that Antarctica is not a foreign country, we still could not agree that the coverage of the FTCA extends to Antarctica. As the Supreme Court has recently reaffirmed, congressional legislation is presumed to apply only within the territorial jurisdiction of the United States, unless the legislation clearly expresses a contrary intent on the part of Congress. *EEOC v. Arabian American Oil Co.*, — U.S. —, 111 S.Ct. 1227, 1230, 113 L.Ed.2d 274 (1991). In *Arabian American Oil*, the Court held that Title VII does not apply beyond the territorial boundaries of the United States. While we here confront a different piece of legislation, the FTCA, the Court's analysis in *Arabian American Oil* nevertheless persuades us that the presumption against extraterritoriality forecloses Smith's claim.

In *Arabian American Oil*, the petitioners unsuccessfully argued that certain sections of Title VII demonstrated Congress's intent to have the statute apply beyond U.S. borders. One of their arguments focused on Title VII's "alien exemption provision," which states that Title VII "shall not apply to an employer with respect to the employment of aliens outside any State." 42 U.S.C. § 2000e–1. The petitioners claimed that the exemption carried the negative implication that Congress intended for Title VII to apply to U.S. citizens abroad. The Court did not agree that this was clear enough evidence of congressional intent to overcome the presumption against extraterritoriality. 111 S.Ct. at 1234. Similarly, in the present case, it can be argued that because Congress saw fit to write into the FTCA a specific foreign country exception, Congress must have intended the FTCA otherwise to apply extraterritorially. We do not believe that such a negative implication can suffice to establish clear congressional intent to have the FTCA apply to torts in Antarctica.

The Court in *Arabian American Oil* also supported its holding by emphasizing that other sections of Title VII evince "a purely domestic focus." *Id.* Of special relevance to our case, the Court found Title VII's venue provisions to be "ill-suited for extraterritorial application as they provide for venue only in a judicial district in the state where certain matters related to the employer occurred or were located." *Id.* The FTCA venue section, 28 U.S.C. § 1402(b), providing for venue "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred," is similarly ill-suited for application to torts occurring in Antarctica. As we discussed above, although the venue provision poses no problems for Smith, Congress did not provide venue for actions based on torts suffered in Antarctica by those who do not reside in the United States. Had Congress intended to override the presumption against extraterritorial application of U.S. law, it likely would have addressed this anomaly.

As in *Arabian American Oil*, we cannot find a sufficiently clear expression of congressional intent to have the FTCA apply extraterritorially. Thus, even if Antarctica is not a foreign country, we believe that the presumption against extraterritorial application of our laws expressed in *Arabian American Oil* precludes the FTCA's application to torts occurring in Antarctica.

### IV

In sum, we are not persuaded that Congress intended to waive immunity for al-

leged torts occurring in Antarctica, and accordingly we do not need to reach other questions that might arise if the district court had denied the motion and allowed the case to proceed to another stage of litigation.

The decision of the district court to dismiss this case for lack of subject matter jurisdiction is

AFFIRMED.

FLETCHER, Circuit Judge, concurring in part and concurring in the judgment:

I concur in all but Part II of the majority's opinion. I subscribe to the holding of the D.C. Circuit in *Beattie v. United States*, 756 F.2d 91 (D.C.Cir.1984), that Antarctica is not a foreign country within the meaning of the FTCA. Nevertheless, I agree with the majority that it would be inconsistent with *EEOC v. Arabian American Oil Co.*, 111 S.Ct. 1227 (1991), to hold that the FTCA applies to torts occurring in Antarctica. Accordingly, I concur in the result of the majority opinion.