Sandra Jean SMITH, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 89–35088.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 1990.

Decided May 1, 1991.

Opinion Withdrawn Dec. 24, 1991.

Opinion Filed Dec. 24, 1991.

---

David Gernant, Portland, Or., for plaintiff-appellant.

Mark B. Stern, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before GOODWIN, FLETCHER and FERNANDEZ, Circuit Judges.

## ORDER

The opinion filed May 1, 1991, and appearing at 932 F.2d 791 (9th Cir.1991) is withdrawn.

The panel has voted unanimously to deny the petition for rehearing. Judges Fletcher and Fernandez have voted to reject the suggestion for rehearing en banc, and Judge Goodwin so recommends.

The full court has been advised of the suggestion for rehearing en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed.R.App.P. 35.

The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.

GOODWIN, Circuit Judge:

Sandra Jean Smith appeals the Rule 12 dismissal of her Federal Tort Claims Act (FTCA) action for the wrongful death of her husband. Smith's action alleged negligent acts or omissions by the United States in Antarctica. The district court dismissed her claim under the "foreign country" exception to the statute. *Smith v. United States*, 702 F.Supp. 1480 (D.Or.1989). We affirm.[1]

## I

"The United States, as a sovereign entity, is immune from suit unless it has consented to be sued." *Cominotto v. United States*, 802 F.2d 1127, 1129 (9th Cir.1986) (citing *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983)). Under the FTCA, the United States has consented to be sued for tort damages "caused by the negligent or wrongful act or omission of any employee of the Government...." 28 U.S.C. § 1346(b) (1982). The FTCA, however, is a limited waiver of sovereign immunity under which certain categories of torts are specifically excluded. *See Grunnet v. United States*, 730 F.2d 573, 574–75 (9th Cir.1984); 28 U.S.C. § 2680 (listing fourteen exceptions to section 1346(b)). Courts are without jurisdiction over any excluded claim. *See Cominotto*, 802 F.2d at 1129.

Under the FTCA, the United States retains sovereign immunity for "[a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k). The central question in this case is whether Antarctica, a sovereignless region without civil tort law,[2] is a foreign

---

1. The facts of this case, as stipulated by the parties, are provided in Exhibit A to the district court's opinion. *Smith*, 702 F.Supp. at 1483–84.

2. "Antarctica can properly be characterized as something of an international anomaly." *Beattie v. United States*, 756 F.2d 91, 93 (D.C.Cir. 1984). Under various theories of ownership, seven countries (Argentina, Australia, Chile, France, Great Britain, New Zealand, and Norway), have asserted claims to approximately eighty percent of the continent. *See* Bederman,

*Exploring the Foreign Country Exception: Federal Tort Claims in Antarctica*, 21 Vand.J. Int'l L. 731, 754–55 & nn. 121–25 (1988). These claims, however, are suspended by the terms of the Antarctica Treaty, 12 U.S.T. 795, T.I.A.S. No. 4780, 402 U.N.T.S. 71 (Dec. 1, 1959), to which the United States is party. Article 4 of the Treaty states that while the treaty is in force no act shall "constitute a basis for asserting, supporting or denying a claim to territorial sovereignty in Antarctica." *Id.* at art. IV.

country within the meaning of Section 2680(k).[3]

The district court recognized that the words "foreign country" are not self-defining and determined that Congress did not intend to waive sovereign immunity for torts alleged to have been committed by government employees outside the territorial jurisdiction of the United States. We agree.

■ The FTCA does not define the term "foreign country." *See* 28 U.S.C. §§ 1291 & 2680(k) (1982). *See also Fernandez v. Brock,* 840 F.2d 622, 632 (9th Cir.1988) (the starting point in determining Congress's intent is the language itself). Moreover, as we have acknowledged, the term "foreign country" is capable of different meanings. *Meredith v. United States,* 330 F.2d 9, 10 (9th Cir.) ("[t]he words 'foreign country' are not words of art, carrying a fixed and precise meaning in every context"), *cert. denied,* 379 U.S. 867, 85 S.Ct. 137, 13 L.Ed.2d 70 (1964); *see also United States v. Spelar,* 338 U.S. 217, 223, 70 S.Ct. 10, 13, 94 L.Ed. 3 (1949) (Frankfurter, J., concurring) (to assume that the term "foreign country" is "self-defining, not at all involving a choice of judicial judgment, is mechanical jurisprudence."); *Burnet v. Chicago Portrait Co.,* 285 U.S. 1, 5, 52 S.Ct. 275, 277, 76 L.Ed. 587 (1932) ("[t]he word 'country,' in the expression 'foreign country' is ambiguous"); *Beattie,* 756 F.2d at 109–110 (Scalia, J., dissenting) (discussing the different possible definitions of the term "foreign country"). Because Congress's intent is not clear from the statute's language, we must ascertain a definition for "foreign country" that is compatible with the context and purpose of the FTCA. *Meredith,* 330 F.2d at 10 (in defining "foreign country" for purposes of the FTCA, "[i]t is necessary to consider the object of the enactment and to construe the expression 'foreign country' so as to achieve, and not defeat, its aim") (quoting *Burnet,* 285 U.S. at 7, 52 S.Ct. at 277).

We are aided in our analysis by the comprehensive opinions of the D.C. Circuit in *Beattie.* Faced with this same question, the court explored the relevant legislative history and case law, and concluded that Antarctica is not a "country" and therefore, as a stateless area, could not be a foreign country. 756 F.2d at 98. The dissent shifted the focus of the inquiry from the interesting but abstract question of what is a country, to the purpose of the FTCA. *Id.* at 107 (Scalia, J., dissenting).

## II

■ We agree with the approach and conclusions of then Judge Scalia and hold that the FTCA does not apply to claims arising in Antarctica. To hold otherwise would render two other provisions of the FTCA nonsensical and require us to create rules governing liability for tortious acts and omissions in Antarctica. *See Central Mont. Elec. Power Co-op., Inc. v. Administrator, Bonneville Power Admin.,* 840 F.2d 1472, 1478 (9th Cir.1988) (we "avoid any statutory interpretation that renders any section superfluous and does not give effect to all of the words used by Congress"); *Hughes Air Corp. v. Public Util. Com'n,* 644 F.2d 1334, 1338 (9th Cir.1981) (it is a "basic rule of statutory construction that one provision should not be interpreted in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless").

The venue provision of the FTCA provides that a tort claim against the United States "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b) (1982). As Judge Scalia wrote in his dissent:

If, as the appellees assert, 'foreign country' means only 'foreign state,' and sovereign immunity has therefore been waived with respect to torts occurring in stateless regions such as Antarctica,

---

**3.** It is undisputed that Smith's cause of action arose from alleged acts or omissions by the United States in Antarctica. Smith's claim is not a "headquarters" claim, which typically involves an allegation of negligent guidance or

conduct within the United States resulting in damage to the plaintiff in a foreign country. *Cf. Leaf v. United States,* 588 F.2d 733 (9th Cir.1978) (recognizing the availability of headquarters claims under the FTCA).

then the venue provision for those regions makes no sense ...

*Beattie*, 756 F.2d at 110 (Scalia, J., dissenting). While Smith, as the personal representative of a deceased victim, is able to lay venue in her state of residence because it has a district court, venue would not exist if the plaintiff happened to reside outside the United States. If we were to find that Antarctica is not a foreign country, a resident of New Zealand, or of any other country,[4] injured by the acts or omissions of a U.S. employee in Antarctica, would find sovereignty waived but no venue in which to proceed against the United States.[5] It is unlikely that Congress intended to create a tort remedy in cases for which no venue exists.

A further indication that the FTCA was not intended to apply in Antarctica is the choice-of-law problem presented in extending the Act's provisions to that region. The statute imposes liability "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1982). *See also Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962) ("We believe that it would be difficult to conceive of any more precise language Congress could have used to command application of the law of the place where the negligence occurred than the words it did employ in the Tort Claims Act"). As a stateless area over which a number of treaty powers have specifically declined to assert claims of sovereignty, Antarctica has no tort law. *See* Antarctica Treaty, *supra* at art. IV(2); *see also Beattie*, 756 F.2d at 111 (Scalia, J. dissenting).

We decline to adopt the D.C. Circuit's conclusion that because "§ 1346(b) leads the court to a place where there is no civil tort law to apply" the court must use its own choice-of-law rules to determine which law applies. *Beattie*, 756 F.2d at 104–05. *See Ducey v. United States*, 713 F.2d 504, 508 n. 2 (9th Cir.1983) (in applying "the law of the place where the act or omission occurred" pursuant to section 1346(b), the whole law "including the choice of law principles" apply) (citing *Richards*, 369 U.S. at 11, 82 S.Ct. at 592). We agree instead with Judge Scalia's conclusion that this choice-of-law dilemma evidences "that the FTCA no more envisions suits for torts occurring in stateless foreign regions than it does suits for torts occurring in foreign sovereignties." *Beattie*, 756 F.2d at 111 (Scalia, J., dissenting).

In a case arising out of an act occurring in the United States Embassy in Bangkok, we held that the foreign country exception precluded the action, adding by way of obiter that: "No authority has been cited indicating that it is the duty of the federal courts to create rules governing liability for tortious acts and omissions on the premises of American embassies and consulates abroad ... and obviously our embassy at Bangkok has no tort law of its own." *Meredith*, 330 F.2d at 10 (citations omitted). Likewise, while the United States conducts activity in Antarctica, both through instrumentalities of space and defense agencies and through private contractors who employ workers and provide for on-the-job injuries, we have been cited to no legislative history which suggests that the federal courts should create substantive or choice-of-law rules governing liability for tortious acts and omissions in Antarctica.

## III

Even if we were to adopt the view that Antarctica is not a foreign country, we still

---

**4.** In *Spelar*, the Court noted that the original draft of the "foreign country" exception "exempted all claims 'arising in a foreign country in behalf of an alien' [but that] at the suggestion of the Attorney General, the last five words were excised ... so that the exemption [did not] turn upon the fortuitous circumstances of the injured party's citizenship." 338 U.S. at 220, 70 S.Ct. at 12 (quoting Hearings, H.R. 5373 and H.R. 6463, 77th Cong., 2d Sess., 29, 35, 66). The United States is thus open to suit by foreign citizens under the FTCA.

**5.** The D.C. Circuit was able to avoid this problem in *Beattie*, where the plaintiffs were residents of Great Britain and New Zealand, through the concept of "pendent venue" because the plaintiffs also sought relief under a "headquarters" claim alleging damages resulting from the negligence of U.S. officers in Washington, D.C. *Beattie*, 756 F.2d at 100–04. The lack of venue problem cannot be so easily avoided in many cases, however.

could not agree that the coverage of the FTCA extends to Antarctica. The FTCA was, and remains, a limited relinquishment by Congress of the common law immunity the United States enjoyed from tort claims. If the search for legislative intent begins with the objective of enlarging the pool of solvent defendants for plaintiffs who think "someone ought to pay" for a particular loss, then the focus of the dissent on Oregon tort law would favor extraterritoriality in cases such as this. If however, the search for legislative intent begins where it started, with sovereign immunity, then it is difficult to reach the conclusion that Congress intended to apply state tort law to claims against the government arising out of governmental presence in Antarctica. At least such intent is far from explicit.

## IV

In sum, we are not persuaded that Congress intended to waive immunity for alleged torts occurring in Antarctica, and accordingly we do not need to reach other questions that might arise if the district court had denied the motion and allowed the case to proceed to another stage of litigation.

The decision of the district court to dismiss this case for lack of subject matter jurisdiction is

AFFIRMED.

FLETCHER, Circuit Judge, dissenting:

The majority concludes that Antarctica, a "sovereignless region without civil tort law," *ante* at 1117, represents a foreign country for purposes of the Federal Tort Claims Act (FTCA), and hence that plaintiff Sandra Jean Smith's suit is barred by Section 2680(k) of the Act, under which the United States has retained its sovereign immunity against claims "arising in a foreign country." 28 U.S.C. § 2680(k) (1982). I respectfully dissent because the majority pays insufficient attention to the purposes underlying the FTCA and its foreign country provision and ignores the sound reasoning of the D.C. Circuit in *Beattie v. United States*, 756 F.2d 91 (D.C.Cir.1984), the only other circuit court case to address the FTCA's applicability to claims arising in Antarctica.

I agree with the majority that since Congress did not define what it meant by the term "foreign country" in enacting Section 2680(k), "we must ascertain a definition for 'foreign country' that is compatible with the context and purpose of the FTCA." *Ante* at 1118. After correctly identifying the task at hand, however, the majority devotes not a single line to a consideration of the FTCA's purpose or that of its foreign country provision. It instead focuses on two other provisions of the FTCA which it asserts would be rendered "nonsensical," *ante* at 1118, were we to hold that the district court enjoyed subject matter jurisdiction over the plaintiff's claims in this case. The majority's approach causes it to overstate greatly the implications of construing Antarctica as something other than a foreign country and leads it to a conclusion inconsistent with the fundamental underpinnings of the FTCA.

## I.

Congress' purpose in enacting the FTCA is evident from the terms of the statute. "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674 (1982). As this language makes clear, the FTCA was "designed primarily to remove the sovereign immunity of the United States ... [and] to render the Government liable in tort as a private individual would be...." *Richards v. United States*, 369 U.S. 1, 6, 82 S.Ct. 585, 589, 7 L.Ed.2d 492 (1962); *see also Rudelson v. United States*, 602 F.2d 1326, 1333 (9th Cir.1979). Congress sought to create in the federal government a responsibility for its actions akin to that borne by the average citizen.

In certain contexts, however, Congress was unwilling to subject the United States to liability in tort. Thus, in Section 2680(k), it declined to waive the federal government's immunity with respect to claims arising in foreign countries. The reasoning

underpinning this exception to the FTCA's general waiver of sovereign immunity was explained by the Supreme Court in *United States v. Spelar*, 338 U.S. 217, 70 S.Ct. 10, 94 L.Ed. 3 (1949), its only decision to address Section 2680(k). "In brief, though Congress was ready to lay aside a great portion of the sovereign's ancient and unquestioned immunity from suit, it was unwilling to subject the United States to liabilities depending upon the laws of a foreign power." *Id.* at 221, 70 S.Ct. at 12 (1949).

In accordance with its desire to render the government's tort liability coextensive with that of a private individual, Congress provided in the FTCA that the district courts have jurisdiction over actions against the United States in circumstances where the government, "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1982). If not limited, the FTCA's invocation of the law of the place where a tort occurs, could extend the district courts' jurisdiction to claims arising out of the government's activities in other countries. The United States would find itself subject to liability under the laws of a foreign sovereign, a result which Congress understandably desired to avoid. It was for this reason, as the Supreme Court recognized in *Spelar*, that Congress enacted Section 2680(k). This circuit has reiterated *Spelar*'s understanding of the foreign country exception on numerous occasions. *See, e.g., Cominotto v. United States*, 802 F.2d 1127, 1129 (9th Cir.1986) ("Th[e] [foreign country] provision was included because Congress did not want to subject the United States to suits under the laws of foreign powers."); *Meredith v. United States*, 330 F.2d 9, 10 (9th Cir.), *cert. denied*, 379 U.S. 867, 85 S.Ct. 137, 13 L.Ed.2d 70 (1964); *Cobb v. United States*, 191 F.2d 604, 609 (9th Cir.1951), *cert. denied*, 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683 (1952); *see also Beattie*, 756 F.2d at 96.

In this case, however, the plaintiff has not sued the government on the basis of actions taking place in a country that possesses a civil tort law of its own. As the majority recognizes, Antarctica is a sovereignless territory that has no legal system. Thus we are presented with a situation in which an American plaintiff has sued her government because of its activities in a region that has no independent body of legal principles which might govern the suit. Congress' concern, evidenced in Section 2680(k), that extending the FTCA's waiver of sovereign immunity to claims arising in foreign countries would subject the federal government to the laws of those countries simply is not implicated under these circumstances. And, as the majority recognizes, nothing in the language of Section 2680(k) itself dictates that a suit such as the present one be deemed barred. The principal purpose of the FTCA in establishing a liability for the United States akin to that of a private citizen should thus control our analysis. The question we should ask is whether an individual might be held liable for acts or omissions akin to those allegedly engaged in by the government and its employees in this case. This is a question which the majority never reaches.

## II.

Without ever considering the purposes of the FTCA or of its foreign country exception, the majority determines that Section 2680(k)'s reservation of sovereign immunity necessarily must extend to claims arising in Antarctica. Any other conclusion, it declares, would render the FTCA's venue and choice of law provisions senseless. This is simply not so. The majority correctly notes that the FTCA's venue clause provides that "a tort claim against the United States 'may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred.' " *Ante* at 1118 (quoting 28 U.S.C. § 1402(b) (1982)). This provision, the majority declares, would make no sense were we to hold that Antarctica is not a foreign country for purposes of Section 2680(k). For in that case a plaintiff who did not reside in a judicial district within the United States would have no venue for a claim against the government

for tortious conduct in Antarctica, even though the government had waived its sovereign immunity to suit for such a tort.

While it is certainly true that if a non-resident of the United States filed a tort claim against the United States arising from its actions in Antarctica, she would not be able to obtain venue pursuant to Section 1402(b), that fact alone does not justify reading Section 2680(k) so as to preclude all suits against the government that stem from its activities in Antarctica. No legal principle I know of guarantees that a plaintiff who can assert a claim over which a federal court would enjoy subject matter jurisdiction is entitled to a forum in which to bring suit. As the Supreme Court noted in *Brunette Machine Works v. Kockum Industries*, 406 U.S. 706, 710 n. 10, 92 S.Ct. 1936, 1939 n. 10, 32 L.Ed.2d 428 (1972), throughout the history of our judicial system there have existed situations "in which the federal courts have jurisdiction but there is no district in which venue is proper." These situations are not frequent, nor are they favored. But the possibility that a gap between subject matter jurisdiction and venue might exist simply does not warrant reading a statute so as to eliminate jurisdiction over a class of cases altogether. Those who have no problem with venue should not be foreclosed from bringing suit simply because others cannot, particularly with respect to a statute such as the FTCA the primary purpose of which, as we have seen, was to expand the jurisdiction of the federal courts.

The FTCA's venue provision poses no difficulties in the present case. Plaintiff Smith resides in Oregon. Under the explicit terms of Section 1402(b), then, she can file suit in the District of Oregon. She should not be prevented from doing so by a reading of the statute predicated on neither its language nor its purpose, but only on the possibility that in what is surely an extremely limited number of cases a resident of a non-United States jurisdiction claiming to have been injured by the activities of the United States government in Antarctica will be unable to obtain venue for her action.

Similarly, the choice of law provision contained in Section 1346(b) of the FTCA does not support the majority's determination that Antarctica is a foreign country for purposes of Section 2680(k). Section 1346(b) requires courts to apply the whole law of the place where a negligent governmental act occurs, including that place's choice of law rule. *See Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Beattie*, 756 F.2d at 104. Antarctica, of course, possesses no such law, and the majority quickly draws from this fact the conclusion " 'that the FTCA no more envisions suits for torts occurring in stateless foreign regions than it does suits for torts occurring in foreign sovereignties.' " *Ante* at 1119 (quoting *Beattie*, 756 F.2d at 111 (Scalia, J., dissenting)). As the *Beattie* court observed, however, Antarctica presents "a situation *directly opposite* to the fear of becoming entangled in foreign law, which produced the 'foreign country' exception. Hence ... we do not feel that the logical conclusion to be derived therefrom is that the entire case ought to be dismissed." 756 F.2d at 105 (emphasis in original). That Antarctica is a sovereignless territory devoid of civil law does not present this Court with only those options considered by the majority—developing our own substantive and choice of law rules to determine the government's liability for torts committed in the region or of dismissing suits for such liability altogether. If we keep in mind the primary purpose of the FTCA, a third alternative comes to the fore. To determine whether the district court enjoyed subject matter jurisdiction over the plaintiff's claims in this case we must consider what the liability of an individual citizen would be under like circumstances. This is an inquiry which is likely to point us in the direction of well-understood common law principles. Thus we return to the question of private liability, an issue never considered by the majority.

### III.

If this case involved a private defendant, a court likely would apply the choice of law rule of the forum state, Oregon, in ascer-

taining the principles of law that should govern its determination of liability. No other state has a closer connection to Ms. Smith's claim than Oregon, the state of her residence. Oregon, furthermore, contains the only federal judicial district in which venue over the plaintiff's action is proper. Because Antarctica has no tort law, there exists no conflict of laws in this case, and hence Oregon's choice of law rule likely would counsel the application of Oregon substantive law to this dispute.

Furthermore, no policy or principle would prevent Oregon from applying its tort law in this fashion. Oregon's capacity to apply its law extraterritorially depends, in the first instance, on the capacity of the United States to do so. While nations generally apply their law based on territorial jurisdiction, nationality is another well-recognized basis for asserting jurisdiction. In Justice Holmes' words, "in regions subject to no sovereign, like the high seas, ... countries may treat some relations between their citizens as governed by their own law...." *American Banana Co. v. United Fruit Co.*, 213 U.S. 347, 355–56, 29 S.Ct. 511, 512, 53 L.Ed. 826 (1909). In other words, where it would not interfere with the sovereignty of another nation, the United States can apply its law based on the nationality of the parties involved.

This approach accords with the Restatement (Third) of the Foreign Relations Law of the United States (1987) [Restatement]. According to the Restatement, a country may exercise jurisdiction to prescribe, adjudicate, and enforce its law based on the parties' nationality, subject to the requirement that such an exercise of jurisdiction is reasonable. Restatement §§ 402, 421, 431. American courts, and this Court in particular, have identified comity as the central principle behind the reasonableness requirement. *See* Restatement § 403 comment (a) (citing *Timberlane Lumber Co. v. Bank of America*, 549 F.2d 597 (9th Cir. 1976)). It would thus be reasonable for the United States to exercise jurisdiction over a tort claim involving its nationals in Antarctica, because no other nation would have a basis for jurisdiction, and as a result the principle of comity would not be disturbed.

Where the United States can apply its law extraterritorially, an individual state such as Oregon may do the same so long as it does not run afoul of the constitutional principle of federalism. In *Old Dominion Steamship Co. v. Gilmore*, 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264 (1907), the Supreme Court held that Delaware could apply its wrongful death statute to a claim for death on the high seas, on the ground that both of the parties involved were Delaware corporations. The Court noted that "the bare fact of the parties being outside the territory, in a place belonging to no other sovereign, [does] not limit the authority of the state...." *Id.* at 403, 28 S.Ct. at 133–34. Oregon similarly has the authority to apply its tort law to a claim that has been brought by one of its residents concerning injuries sustained in an accident in Antarctica, a place which like the high seas belongs to no other sovereign.

Oregon could thus legitimately apply its tort law to a claim akin to plaintiff Smith's if the defendant were a private individual or entity. Whether the state would actually do so is, of course, a question of state law. It is substantially the same question as that which confronts a district court in every FTCA suit: Would a private individual be liable under like circumstances? I believe that this is the question we should pose to the district court on remand in order that it determine whether Ms. Smith is entitled to pursue her claim against the United States for the death of her husband. We should not affirm the district court's dismissal for lack of subject matter jurisdiction.

As the D.C. Circuit noted in *Beattie*, "we [would] have a no-man's land of law in Antarctica, unless United States law covers the actions of United States citizens—not an unfair concept—and United States law includes the Federal Tort Claims Act ... [U]nless this concept is accepted, Antarctica is an area without any law whatsoever." 756 F.2d at 105–06. The majority's decision in this case essentially renders lawless a region where many of our citizens live and work. Since neither the language of the FTCA nor its underlying prin-

ciples justify this result, I respectfully dissent.